■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ENRICO COSIMO, Appellant, et al., Defendant.

APPEAL from a judgment of a Court of General Sessions, County of New York, rendered February 19, 1957, upon a verdict convicting defendant of the crimes of possessing a narcotic drug with intent to sell and possessing a narcotic drug.

MEMORANDUM BY THE COURT. A conviction should not be permitted to stand even though the proof of the defendant's guilt be clear and convincing, where the conduct of the District Attorney is such as to affect the substantial rights of the defendant. We are of the opinion that in this case the claimed misconduct on the part of the District Attorney did not affect the substantial rights of the appellant and, therefore, the judgment of conviction should be affirmed (Code Crim. Pro., § 542).

VALENTE, J. (dissenting). We agree with the majority that the record contains convincing evidence of the appellant's guilt justifying his conviction. However, we are of the opinion that the appellant was deprived of the fundamentals of a fair trial because of the misconduct of the assistant district attorney in the presentation of the case. We are not satisfied that this misconduct did not influence the verdict. Therefore, we cannot overlook it as harmless error which did not substantially affect appellant's rights. The mandate of section 542 of the Code of Criminal Procedure does not apply (*People* v. *Mleczko,* 298 N. Y. 153).

The appellant and the codefendant Mangiameli were arrested while seated in an automobile under the front seat of which were found, wrapped in newspapers, five packages of a white powder of a total weight in excess of four ounces with a concentration of 17.6% heroin.

They were jointly indicted, tried and convicted of a violation of section 1751 of the Penal Law.

The predicate of the People's case was the presumption created by subdivision 4 of section 1751 of the Penal Law, viz., that any person in an automobile where narcotics are found is presumed to have possessed and controlled the narcotics.

The appellant testified and denied any knowledge of the presence of narcotics in the automobile. These denials, if believed by the jury, would rebut the presumption (see *People* v. *Will,* 289 N. Y. 413; *People* v. *Russo,* 278 App. Div. 98).

It was quite obvious that the arrest in this case arose from disclosures made by a police informer named Scaccia. The entire treatment by the prosecutor of the subject of the informer was most prejudicial and indicated a deliberate attempt obliquely to get before the jury Scaccia's statements without calling him as a witness.

Early in the trial a detective testified that he saw the codefendant talking to the "informer" Scaccia. On objection the jury was promptly instructed to disregard the characterization. This was factually impossible, particularly in the light of what subsequently transpired.

In cross-examining the appellant, the prosecutor asked the following:

"Q. * * * As a matter of fact, didn't Mangiameli get out of the car and leave you in the car on 44th Street west of 11th Avenue? A. No.

"Q. * * * Didn't Mangiameli get out of the car and leave the narcotics with you in the car, because he feared a trap? A. No." (On objection, this question was withdrawn.)

"Q. Didn't Mr. Mangiameli tell you that he was going to 42nd Street and 11th Avenue to meet Jimmie Scaccia, and that you should stay in the car? A. No.

"Q. He didn't tell you—— A. No.

"Q. Didn't he return to the car and tell you that Jimmie Scaccia told him he didn't have the money with him and he was going to return in fifteen minutes with the money?" (An objection to this question was sustained as to form.)

"Q. Didn't Mr. Mangiameli tell you at that time that Scaccia had not reappeared on the street corner; and didn't you and he discuss whether you would continue waiting for him? A. No."

Since Scaccia was not a witness, there was no basis in the evidence for the prosecutor's injection of these supposed conversations, and their only purpose was improperly to connect the "informer" with the appellant. Finally, in his summation, in a patent effort further to tie the defendant in with the informer, the prosecutor asserted that there was no doubt of Mangiameli's guilt because it was not contradicted that Mangiameli spoke to this man Scaccia. This was not only improper comment as to Mangiameli, but as to the appellant as well. The only person who could controvert this was Mangiameli. The import of this comment was that Mangiameli's guilt was established by his failure to deny the Scaccia meeting. Ergo, it established the appellant's guilt because he and Mangiameli were charged with acting in concert in their possession of the narcotics.

Again, the cross-examination of the appellant about his acquaintance with narcotic dealers was unfair and prejudicial. After defendant had denied he knew any people that were engaged in the narcotic traffic, the prosecutor then read a list of names of individuals inquiring of the defendant separately if he knew each one. In the atmosphere of this trial, the mere calling off of these names by the prosecutor, if not calculated to leave in the minds of the jurors the impression that the prosecutor was enumerating a "Who's Who" in narcotic dealers, must inevitably have so resulted. This palpable attempt to establish guilt by association was inexcusable. The prejudicial effect thereof was further aggravated when the prosecutor in his summation said: "If you were operating an automobile, and a friend or relative or employee or what have you, got in the car with a large pocketbook or overcoat or bag or something, would you search them for narcotics. * * * Well, you wouldn't and I wouldn't, for the simple reason that *we don't hang out with dope pushers.*" (Italics mine.)

Earlier in the summation the prosecutor answered a hypothetical question of the appellant's counsel as to how one would rebut a presumption that narcotics, found in a car in which he was seated, belonged to him. He stated: "I would bring in my rabbi or minister or priest, talk about the fact that I go to a house of worship. * * * I would also bring in people who lived in the community and knew my reputation to give their opinion as to that reputation. * * * That is what I would do, and I think that is what each of you would do, if you were unjustly accused of a crime, as this defendant claims."

Allowing for the fact that the defense counsel may have provoked a retort, there nevertheless was no justification for injecting defendant's religious habits or lack of them. Additionally, the defendant's general character was not in issue, and the appellant did not put it in issue by taking the stand to testify in his own behalf (*People* v. *Hinksman,* 192 N. Y. 421, 436).

Moreover, the prosecutor overstepped the bounds of proper cross-examination when he questioned appellant about driving his automobile in the vicinity of a pharmacy with 100 ounces of quinine in the car; about defendant's alleged passing of six red lights; about speeding and about being stopped by Federal agents. None of these matters had any relation to the crime charged. They were injected solely for the purpose of improper prejudice and cannot be justified on the issue of credibility.

It would extend this opinion to inordinate lengths to discuss all of the assignments of error at the trial. Some will be mentioned which, although standing by themselves would not warrant a reversal, do in this case add to the cumulative effect of the other errors. We believe the prosecution should not have been permitted, on the redirect examination of the arresting officer, to have the officer testify as to the finding of $400 in cash when he searched defendant's home; and that it was erroneous to deny defendant's counsel the right to examine the Grand Jury testimony of the arresting officer after the prosecutor had used the minutes to enable the arresting officer to explain an inconsistency between his testimony on the stand and before the Grand Jury.

The misconduct of the prosecutor in this case thus involved improper remarks in his summation and his subtle attempts to get evidence before the jury which would not have been admissible if properly offered. Superimposed on the other errors, the cumulative effect was clearly a violation of appellant's substantial rights and a denial of a fair trial.

We have commented in *People* v. *Lombard* (4 A D 2d 666), on the duties and permissible conduct of a District Attorney on a trial in a criminal case. There is no reason to labor the point further here. Suffice it to say that the observations made there are equally pertinent here.

The conviction should, therefore, be reversed and a new trial ordered.

Breitel, Botein and Rabin, JJ., concur in Memorandum by the Court; Valente, J., dissents and votes to reverse and order a new trial, in opinion in which Peck, P. J., concurs.

A conviction should not be permitted to stand even though the proof of the defendant's guilt be clear and convincing, where the conduct of the district attorney is such as to affect the substantial rights of the defendant. We are of the opinion that in this case the claimed misconduct on the part of the district attorney did not affect the substantial rights of the appellant, and therefore, the judgment of conviction is affirmed (Code Crim. Pro., § 542).