THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN Russo, Appellant, et al., Defendants.

First Department, March 27, 1951.

*Frank Serri* for appellant.

*Jack M. Cotton* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney, New York County*), for respondent.

COHN, J. At about 1:30 A.M. on April 7, 1949, in the city of New York, policemen in a patrol car observed appellant and the other two defendants seated in a parked car and saw a fourth man, Grubhofer, standing on the sidewalk with his head inside the window of the parked vehicle. Grubhofer was ordered to step aside and the three defendants were directed to come out of the car. After the four men had been searched for weapons, a loaded pistol was found in the automobile on the ledge behind the rear seat.

Shortly thereafter, when questioned in the police station, appellant Russo admitted to one of the arresting officers, Hladek by name, that he knew the gun was in the car; that he knew where it came from and how it had gotten in the auto. According to Hladek, appellant stated that his codefendant Singer brought the gun pursuant to a prearranged plan made earlier that night.

Defendants Singer and De Peralta and the fourth man, Grubhofer, were also questioned by Hladek in the police station. Their statements to the police were not binding upon appellant Russo. However, the statement of Grubhofer, who was not a defendant, was adduced at the trial through defense counsel's cross-examination of the officer in which counsel quoted some of Hladek's prior testimony given in the Magistrate's Court. This was to the effect that Grubhofer had told Hladek that while he (Grubhofer) was standing outside the car the gun was on his person, he having obtained it from Singer, and that upon seeing the officers drive up, he withdrew the weapon from inside his coat and threw it in back of the automobile.

Appellant did not take the stand and called no witnesses in his defense.

It is the contention of appellant that section 1898–a of the Penal Law, upon which the People rely in part to sustain the conviction, is unconstitutional and, in any event, that the guilt of appellant was not established beyond a reasonable doubt.

Section 1897 of the Penal Law, so far as material here, prohibits the unlicensed possession of a pistol (subd. 4). Section 1898-a as amended by chapter 390 of the Laws of 1936 provides as follows: " The presence in an automobile, other than a public omnibus, of any of the following weapons, instru-

ments or appliances, viz., a pistol * * * shall be presumptive evidence of its illegal possession by all the persons found in such automobile at the time such weapon, instrument or appliance is found."

Appellant's guilt, we think, was proven beyond a reasonable doubt. He and his codefendants and the pistol were all in the automobile together immediately prior to the arrest. The testimony of the police officers sustains this view. Appellant admitted it, as did defendants Singer and De Peralta. Even the incompetent statement of Grubhofer, upon which appellant relies, places the appellant and the weapon in the automobile at the same time.

The statutory presumption of a gun's illegal possession by all persons found in an automobile is, of course, a rebuttable one. The evidence here, far from rebutting the presumption, served to confirm it. Possession as used in connection with the penal provisions relating to weapons is a knowing and voluntary possession "which places the weapon within the immediate control and reach of the accused and where it is available for unlawful use if he so desires." (*People* v. *Persce,* 204 N. Y. 397, 402.) In the case before us, the gun, as it lay on the back ledge of the automobile, was clearly "within the immediate control and reach of" the appellant and his companions and available for unlawful use if they so desired. Appellant knew the gun was in the car and he knew beforehand that it was going to be brought there. Indeed, the very purpose of the meeting at the place of the arrests was to have Singer bring the weapon to the rendezvous after he had picked it up at his home. The evidence in this case disclosed constructive possession of the loaded revolver by appellant. The courts have so decided under similar circumstances. (*People* v. *Murphy,* 276 N. Y. 612; *People* v. *Amberg,* 216 App. Div. 791; *People* v. *Birnbaum,* 208 App. Div. 476.)

Appellant's assertion that section 1898-a of the Penal Law is unconstitutional is apparently based upon the claim that it is in conflict with the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the Constitution of the State of New York, which provide in part that no person shall be compelled in any criminal case to be a witness against himself, nor deprived of life, liberty or property without due process of law.

It is well settled that statutes such as section 1898-a of the Penal Law, providing that certain facts are presumptive evidence of one or more of the ultimate facts in issue, are not unconstitu-

tional where, as here, there is a rational connection with the facts proved and the conclusion presumed, and where the presumptions themselves are neither conclusive nor arbitrary. (*Morrison* v. *California,* 291 U. S. 82, 90 [1934]; *Manley* v. *Georgia,* 279 U. S. 1, 5–6 [1929]; *Mobile, J. & K. C. R. R. Co.* v. *Turnipseed,* 219 U. S. 35, 42–43 [1910]; *People* v. *Adams,* 176 N. Y. 351, [1903] affd. *sub. nom. Adams* v. *New York,* 192 U. S. 585, 598 [1904]; *People ex rel. Woronoff* v. *Mallon,* 222 N. Y. 456, 464.)

In *Adams* v. *New York* (192 U. S. 585, 598–599, *supra*) the Supreme Court, in holding constitutional provisions of the Penal Code of New York (§§ 344-a, 344-b) making possession of policy slips presumption of possession knowingly in violation of law, said: " It is further urged that the law of the State of New York, Penal Code, § 344b, which makes possession by persons other than a public officer of papers or documents, being the record of chances or slips in what is commonly known as policy, or policy slips, or the possession of any paper, print or writing commonly used in playing or promoting the game of policy, presumption of possession thereof knowingly in violation of section 344a, is a violation of the Fourteenth Amendment to the Constitution of the United States in that it deprives a citizen of his liberty' and property without due process of law. We fail to perceive any force in this argument. The policy slips are property of an unusual character and not likely, particularly in large quantities, to be found in the possession of innocent parties. Like other gambling paraphernalia, their possession indicates their use or intended use, and may well raise some inference against their possessor in the absence of explanation. Such is the effect of this statute. Innocent persons would have no trouble in explaining the possession of these tickets, and in any event the possession is only *prima facie* evidence, and the party is permitted to produce such testimony as will show the truth concerning the possession of the slips. Furthermore, it is within the established power of the State to prescribe the evidence which is to be received in the courts of its own government. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 729.''

In *People* v. *Cannon* (139 N. Y. 32, 43), the court stated the apposite law as to the power of the Legislature to authorize a presumption, as follows: '' The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with the main fact. The inference of the existence of the main fact because of the existence of the fact actually proved, must not be merely and

purely arbitrary, or wholly unreasonable, unnatural or extraordinary, and the accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence and given such weight to the presumption as to it shall seem proper. A provision of this kind does not take away or impair the right of trial by jury. It does not in reality and finally change the burden of proof. The people must at all times sustain the burden of proving the guilt of the accused beyond a reasonable doubt. It, in substance, enacts that, certain facts being proved, the jury may regard them, if believed, as sufficient to convict, in the absence of explanation or contradiction. Even in that case, the court could not legally direct a conviction. It cannot do so in any criminal case. That is solely for the jury, and it could have the right, after a survey of the whole case, to refuse to convict unless satisfied beyond a reasonable doubt of the guilt of the accused, even though the statutory *prima facie* evidence were uncontradicted.'' (See *Commonwealth* v. *Williams,* 72 Mass. 1.)

All presumptions arising from facts cast upon the defendant the burden of overcoming them. Here the statutory presumption merely assumes that in the absence of some explanation the occupants of an automobile in which a pistol is found are in illegal possession of it. If the persons in the automobile have no actual knowledge of its presence, there cannot be a conviction and the burden of establishing beyond a reasonable doubt their possession of the gun is nevertheless with the People.

In *People* v. *Murphy* (276 N. Y. 612) the Court of Appeals had under consideration the constitutionality of a statute making the presence of a machine gun in any room or dwelling presumptive evidence of illegal possession by all occupying the place where the machine gun is found (Penal Law, § 1897, subd. 1-a). In that case the court affirmed a judgment of conviction for illegal possession by numerous defendants occupying the place where a quantity of the prohibited weapons was found.

A similar presumption created by statute was passed upon and judicially approved with respect to section 1308 of the Penal Law which declared that a junk dealer who buys stolen property of a certain type is guilty of crime provided he does not first try to ascertain that the person selling the property had the legal right to do so. (*People* v. *Rosenthal,* 197 N. Y. 394, affd. *sub nom. Rosenthal* v. *New York,* 226 U. S. 260.)

Although the Court of Appeals in several somewhat recent cases has stated that in them it did not pass upon the consti-

tutionality of section 1898-a of the Penal Law (*People ex rel. Dixon* v. *Lewis,* 276 N. Y. 613; *People* v. *Burt,* 283 N. Y. 740), it would appear to have directly approved its constitutionality in *People* v. *Rogalski* (281 N. Y. 581) where a conviction under section 1897 of the Penal Law for carrying a dangerous weapon as a felony in circumstances very similar to those here was sustained. There the three convicted defendants, together with a fourth who was acquitted, were found in an automobile by police officers. Under the rear seat of that car was found a loaded gun and in the back of a front seat cushion was another loaded gun. In the pocket of defendant Rogalski were found two cartridges which might have been used in either gun. Each of the three convicted defendants stated to the police officers who apprehended them that he knew nothing about the presence of the guns in the car. An examination of the record on appeal in that case shows that the very first point argued by the three convicted defendants was that section 1898-a was unconstitutional; "that the court erred and invaded the constitutional rights of the defendants by charging the jury the presumption of possession under Section 1898-a of the Penal Law"; and that the indictment should have been dismissed against all defendants. The charge of the court to the jury instructing them, which followed the mandate of the statute (§ 1898-a) was duly excepted to. Nevertheless the Court of Appeals affirmed the judgment of conviction, but without opinion. (Cf. *United States ex rel. Rogalski* v. *Jackson,* 146 F. 2d 251, 252; *People ex rel. Shinsky* [*Gerschinsky*] v. *Hunt,* 178 Misc. 960, and *People* v. *Burt,* 258 App. Div. 896, affd. 283 N. Y. 740, *supra.*)

It is common knowledge that the automobile is frequently employed as an agency in the furtherance of violent and serious crimes committed not by one but by several individuals. Before the enactment of section 1898-a of the Penal Law in the year 1936, where a group of persons were about to embark on a mission of law-breaking in an automobile in which a revolver was placed, no law could reach any of the occupants unless it was established that the weapon was found on the person of an occupant (*People* v. *Persce,* 204 N. Y. 397, *supra*; *People* v. *Andreacchi,* 221 App. Div. 136). Urgent need for legislation making the presence of a forbidden firearm in an automobile presumptive evidence of its possession by all occupants was judicially recognized (*People ex rel. De Feo* v. *Warden of City Prison,* 136 Misc. 836, opinion by LEWIS, J.). It is not unreasonable to require, as the statute in effect commands, that those who occupy an automobile in which a revolver or other dangerous

weapon is found should explain their knowledge of its presence in the automobile. An explanation by an innocent occupant of such a car of course, overcomes the presumption. There is thus no danger that an innocent person may become a victim of circumstances. In view of the facts of the case, and particularly the appellant's unsatisfactory explanation to the arresting officer, the triers of fact were warranted in according full effect to the statutory presumption.

The defendant, in our view, was properly convicted of the crime of unlawfully possessing a firearm and the judgment of conviction should accordingly be affirmed.

SHIENTAG, J. (dissenting). This is an appeal from a judgment of conviction of unlawful possession of a firearm in violation of subdivision 4 of section 1897 of the Penal Law. Three defendants were found guilty of that offense by the Court of Special Sessions. Only one, Russo, on whom sentence was suspended, has appealed.

The offense for which appellant was convicted was, solely one of possession. The Supreme Court of the United States has warned that " both in common speech and in legal terminology, there is no word more ambiguous in its meaning than Possession." (*National Safe Deposit Co.* v. *Stead,* 232 U. S. 58, 67, quoted in *People* v. *Wolosky,* 296 N. Y. 236, 239.) In clarifying this inherently ambiguous word, the Court of Appeals has, in decisions under this and analogous statutes, analyzed possession into its essential elements of ownership, custody or control. While section 1897 of the Penal Law is clearly not limited to actual physical possession (*People ex rel. Darling* v. *Warden,* 154 App. Div. 413), the presence of some one of these elements must be shown. (See *People* v. *Leavitt,* 301 N. Y. 113; *People* v. *Wolosky, supra,* and *People* v. *Persce,* 204 N. Y. 397.)

The instant record is devoid of any proof that the weapon was ever in appellant's ownership, custody or control. The conviction can be supported therefore, if at all, only by reliance upon the presumption of possession created by section 1898-a of the Penal Law. That section provides in part: " The presence in an automobile, other than a public omnibus, of any of the following weapons, instruments or appliances, * * * shall be presumptive evidence of its illegal possession by all the persons found in such automobile at the time such weapon, instrument or appliance is found."

I fully agree with the learned majority that section 1898-a of the Penal Law is constitutional. The purpose of the statute

is a beneficient one; its intent is clear. It sought to overcome the impasse in which the prosecution found itself when all occupants of an automobile disclaimed possession of a weapon found therein. But it should be emphasized that the statute was not intended to and did not create a new crime of " occupancy of an automobile in which there is a weapon," or even of " occupancy of an automobile in which there is known to be a weapon." The statute is entirely evidential in nature and serves only to shift the burden of coming forward with credible evidence. (See, Morgan on Some Observations Concerning Presumptions, 44 Harv. L. Rev. 906 [1931].) Section 1898-a of the Penal Law does not make it obligatory upon the defendant himself to take the stand and explain the presence of the weapon in the car of which he is one of the occupants. Where, as here, there is evidence in the record that negatives possession by the defendant or establishes possession by another so as to raise a reasonable doubt of the defendant's illegal possession of the weapon, a conviction cannot stand.

What is the evidence adduced by the prosecution in this case? The appellant was one of four occupants of the car in which the weapon was found by the police. Officer Hladek testified that after the arrest the defendant Russo made the following admissions to him: " He said that — well, I asked him whether he knew that the gun was in the car, and he claimed he did know the gun was in the car. * * *. He said that Singer got the gun originally; he bought it from a merchant seaman approximately a year before this date, April 7. * * * Singer was supposed to have picked up the gun from his home. * * * there was a delay in picking up the gun and, instead of arriving at this spot, 109th Street, at twelve midnight, they arrived a little later."

These admissions in no way indicate that Russo knew the weapon was in the body of the car rather than in the custody of its owner, Singer. Knowledge by one occupant of a car that another occupant has a weapon on his person does not render the former guilty of illegal possession.

There was, however, a time when the weapon was in the body of the car itself. Officer Hladek testified that at about one thirty o'clock on the morning of April 7, 1949, he was on radio patrol duty with officer Butler. As he neared 109th Street between 5th and Madison Avenues, he noticed a car parked on the south side of the street. It had Florida license plates and the lights were on. There were occupants in the car. He parked the police car alongside of the private car, which was a two-door

Buick convertible with front and back seats. He approached the rear of the convertible. Officer Butler approached from the front. As officer Hladek went around the side, he noticed one Grubhofer standing outside of the car. He had been an occupant of the car. Grubhofer had his head in the car and the officers told him to get away from the door. Russo was in the front seat of the car. He was encased in a cast from his chest to his hips. The police officer ordered the three occupants out of the car. His partner searched them a foot or two from the car and found no weapon on any of them; nor was a weapon found on Grubhofer. Officer Butler then searched the car and found the gun on the shelf behind the back seat of the car. It was in no way concealed.

Officer Hladek went further in his testimony. On direct examination by the assistant district attorney, Hladek testified as follows:

" Q. Now, did you have a conversation with Mr. Milton Singer? [one of the occupants of the car and a codefendant] A. Yes.

" Q. Was that in the station house? A. Yes.

" Q. Tell us about what you said to him and what he replied. A. Well, I asked him whether he knew the gun was in the car. He claimed he did. I asked him how it got there. He claimed that he bought the gun approximately one year ago from a merchant seaman, and that it was hidden in the back yard of the premises where he lived. He was supposed to have picked up that gun at nine o'clock at that night and meet these defendants and bring this gun in the car to this spot at 109th Street and Fifth and Madison Avenue. He claims he gave the gun to Grubhofer, and while they were riding in the car, Grubhofer had the gun in his possession.

" Q. That is what Singer told you? A. That is what Singer said."

There is testimony on cross-examination as to what Grubhofer himself told Officer Hladek on the night of the arrest. I shall assume, although the record is not altogether clear on this point, that an objection was properly interposed by the District Attorney to this evidence on cross-examination and that it was incompetent. Even without Grubhofer's story as to what took place, the record fairly shows that the gun was owned by the codefendant Singer, that it was on Grubhofer's person while he was one of the occupants of the car and that he threw it into the back of the car as he saw the police car approaching.

Even if the gun was found in the body of a car, in which there were several occupants, where the presence of the gun was explained ,as it has been here, the presumption of section 1898-a was rebutted so far as the defendant Russo was concerned and it was unnecessary for him to take the stand himself. In any event, I am of the opinion that, on the entire record, the charge of unlawful possession was not proven against him beyond a reasonable doubt.

The conviction should be reversed and the information dismissed.

PECK, P. J., CALLAHAN and VAN VOORHIS, JJ., concur with COHN, J.; SHIENTAG, J., dissents and votes to reverse and dismiss the information, in opinion.

Judgment affirmed.