Samuel ALLEN, Raymond Hardrick and Melvin Lemmons, Petitioners,

v.

COUNTY COURT, ULSTER COUNTY and New York Woodbourne Correctional Facility, Woodbourne, New York, Respondents.

No. 158, Docket 77–2059.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1977.

Decided Nov. 29, 1977.

Eileen F. Shapiro, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Lillian Z. Cohen, Asst. Atty. Gen., New York City, of counsel), for respondents.

Michael D. Young, New York City (Goldberger, Feldman & Breitbart, New York City, of counsel), for petitioners.

Before MANSFIELD and TIMBERS, Circuit Judges, and DOOLING, District Judge.*

MANSFIELD, Circuit Judge:

The principal issue in this case is the constitutionality of a New York statute which makes the "presence in an automobile . . . of any firearm . . . presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found, except under the following circumstances: (a) if such weapon . . . is found upon the person of one of the occupants therein. . . ."[1] Judge Richard Owen of the Southern District of New York granted appellees' application as state prisoners for a writ of habeas corpus on the ground that this statutory presumption was unconstitutional as applied in their state trial for felonious possession of a loaded firearm, N.Y.Penal Law § 265.05(2) (McKinney's 1967) (now found at § 265.02(4) (McKinney's 1976–77 Supp.)). Because we conclude that the presumption is unconstitutional on its face, we affirm.

On March 28, 1973, an automobile driven by appellee Lemmons, in which appellees

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

1. N.Y.Penal Law § 265.15(3) (McKinney's 1976–77 Supp.) provides:

"3. The presence in an automobile, other than a stolen one or a public omnibus, of any firearm, defaced firearm, silencer, explosive or incendiary bomb, bombshell, gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckles, chuka stick, sandbag, sandclub or slungshot is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except under the following circumstances: (a) if such weapon, instrument or appliance is found upon the person of one of the occupants therein; (b) if such weapon, instrument or appliance is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol or revolver and one of the occupants, not present under duress, has in his possession a valid license to have and carry concealed the same."

The only difference between this provision and the one that was applicable during the appellees' trial is the addition of chuka sticks to the list of weapons to which the presumption applies.

Allen, Hardrick and one "Jane Doe"[2] were passengers, was stopped by State Police for speeding on the New York State Thruway. When the car was stopped Lemmons was in the driver's seat, Jane Doe in the right front seat, and Allen and Hardrick in the back seat. After Lemmons had left the car and had been arrested for reasons not relevant here,[3] one of the police officers returned to the car, looked through the front window on the passenger's (Doe's) side, and saw part of a handgun protruding from a ladies' handbag resting on the floor of the car next to the right front door. A search of the handbag revealed a loaded .45 automatic pistol and a loaded .38 revolver.[4] Appellees and Doe were indicted by the State of New York, tried before a jury in the Ulster County court and convicted of felonious possession of these two weapons in violation of N.Y.Penal Law § 265.05(2). At trial the prosecution relied entirely on the statutory presumption to establish the defendants' dominion or control over the guns,[5] introducing no evidence other than appellees' presence in the car in which the handbag containing the guns was also present to demonstrate possession.

At the close of the state's case appellees moved to dismiss the indictment, arguing that the presumption did not apply to them, since the guns had been "found upon the person" of Jane Doe within the meaning of that exception to the presumption. See N.Y.Penal Law § 265.15(3), quoted in fn. 1. This motion was denied. Thereafter, in its instructions the court informed the jurors of the statutory presumption and that they could "infer and draw a conclusion that such prohibited weapon was possessed by each of the defendants who occupied the

automobile at the time when such instruments were found," but omitted any reference to the statute's "upon the person" exception. No objection to the omission was voiced. After a guilty verdict had been returned, appellees moved to set it aside and to dismiss the indictment, renewing their claim that the presumption was inapplicable to them as a matter of law and arguing in addition that, if the presumption were found applicable, it was unconstitutional as applied. This motion was also denied.

Appellees' convictions were affirmed by the Appellate Division, Third Department, *People v. Lemmons,* 49 A.D.2d 639, 370 N.Y. S.2d 243 (1975), two of the five judges dissenting in part, and by the New York Court of Appeals, *People v. Lemmons,* 40 N.Y.2d 505, 387 N.Y.S.2d 97, 354 N.E.2d 836 (1976), with two judges dissenting in part. The latter court held that the evidence bearing on applicability of the presumption had warranted submission of the question to the jury but declined to go further, noting that the defendants had failed to object to the omission of the "upon the person" exception from the jury charge. Although the majority opinion did not explicitly deal with the issue, it implicitly upheld the statute's constitutionality, discussing its legislative history and the reasoning behind its enactment. The defendants had contended before the Appellate Division and the Court of Appeals that the statute was unconstitutional as applied, citing *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), in support of their argument that "a presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can be said with substantial

---

**2.** Ms. Doe, a juvenile, was tried with the appellees, convicted and sentenced to five years probation. Her case is not before us.

**3.** When the car was pulled over, Lemmons produced his driver's license. A radio check indicated—mistakenly as it turned out—that he was wanted on a fugitive warrant from Michigan, and he was arrested for that reason.

**4.** A subsequent search of the trunk of the car in which the appellees were riding uncovered a machine gun and more than a pound of heroin,

but Jane Doe and the appellees were all acquitted on charges arising out of this search.

**5.** The State has argued on occasion that the large caliber of these guns was some evidence that Jane Doe, a 16-year old girl, was not their owner. Even if the inference is accepted, of course, it reveals nothing about the identity of the person or persons for whom Doe may have been holding them—be it appellees or some unknown third party or parties.

assurance that the presumed fact is more likely than not to flow from the proven fact upon which it is made to defend." (Defendants' brief before App.Div., p. 23, and brief before Court of Appeals, p. 20.) Moreover, Judges Wachtler and Fuchsberg maintained in dissent that the presumption could not constitutionally be applied in this case.[6] 40 N.Y.2d at 513–16, 387 N.Y.S.2d 97, 354 N.E.2d 836.

Appellees thereafter filed their petition for a writ of habeas corpus in the Southern District of New York, claiming that New York's presumption was unconstitutional both on its face and as applied to their case and that the failure to charge the jury as to the possible applicability of the "upon the person" exception constituted a denial of due process.[7] Judge Owen issued the writ, holding that the statutory presumption was unconstitutional as applied.[8]

On appeal, the State argues (1) that the issue of the presumption's constitutionality on its face is not properly before this court because of the appellees' alleged failure to exhaust state remedies with regard to this claim, (2) that the presumption is in any event facially valid, and (3) that Judge Owen's holding that the statute was uncon-

stitutional as applied was an improper ruling on an issue of state law. Because of the grounds of our disposition, we need deal only with the first two contentions.

## DISCUSSION

■ An applicant for federal habeas relief must first exhaust available State remedies before filing his application. 28 U.S.C. § 2254(b)–(c); *Fay v. Noia,* 372 U.S. 391, 434–35, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). However, "petitioners are not required to file 'repetitious applications' in the state courts." *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971) (per curiam); *Brown v. Allen,* 344 U.S. 443, 448–49 n. 3, 73 S.Ct. 397, 97 L.Ed. 469 (1953). "Once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Nor is a habeas petitioner required to pursue available state remedies for collateral attack if he has presented his federal claims to the state courts on direct appeal. *United States ex rel. Newsome v. Malcolm,* 492 F.2d 1166, 1169 & n. 4 (2d Cir. 1974), affd.

---

**6.** The New York Court of Appeals could not, of course, simply ignore appellees' constitutional claim and thereby force them to undertake another round of state court litigation. E. g., *Eaton v. Wyrick,* 528 F.2d 477, 480 (8th Cir. 1975) ("State courts need not have definitively ruled on the merits of the issues raised by a petitioner seeking federal habeas corpus relief; rather, it is sufficient that the state courts have been *properly presented* with the *opportunity* to rule on the issues."); see *United States v. Fay,* 333 F.2d 815 (2d Cir. 1964).

**7.** Because we find the presumption unconstitutional, we need not reach either (1) the question of whether the appellees forfeited their claim based on the court's failure to instruct regarding the "on the person" exception by failing to object to the trial judge's charge on this basis, see *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), or (2) the merits.

**8.** In addition, Judge Owen, noting that the statutory presumption does not operate when the weapon is found "upon the person" of another occupant, suggested that this exception would apply in the present circumstances, since the contents of Doe's handbag, including the weap-

ons, would necessarily be upon her person.. However, since federal courts may grant habeas corpus relief to a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), a state court finding as to the sufficiency of evidence—in this case the evidence on the issue of whether the weapons were on Doe's person—rarely presents the kind of federal question cognizable on habeas corpus. See p. 1010, *infra.* Moreover, the majority opinion of the New York Court of Appeals took the view that the placement of the weapon in Doe's handbag did not necessarily indicate that she was "in sole and exclusive possession of the weapon." Appellants here point to other circumstances—the large calibers of the two weapons, the tender age of Doe (16 years) and the protrusion of the gun from her bag—as support for an inference by the jury that as a young "moll" she was holding the guns for the others or that, upon the car being flagged down by the police, they stuffed their guns into her bag in order to avoid being caught with the weapons on their adult persons, knowing that she would be treated as a youthful offender.

*sub nom. Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975).

▉ In this case appellees have consistently argued, both at their state trial and on appeal, that the presumption was unconstitutional as applied to them.[9] However, appellants urge that appellees' contention here that the presumption is unconstitutional on its face represents a "different" claim that was not presented in the state courts. The state remedies, the argument goes, were therefore not exhausted. However, as the Supreme Court pointed out in *Picard v. Connor,* in determining whether a claim raised in habeas proceedings is substantially the same as that previously presented to the courts of a state,

*"Obviously, there are instances in which 'the ultimate question for disposition' . . . will be the same despite variations in the legal theory or factual allegations urged in its support.* A ready example is a challenge to a confession predicated upon psychological as well as physical coercion. . . . We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts." (Emphasis added.) 404 U.S. at 275, 277–78, 92 S.Ct. at 513.

Applying this principle to the present case, we conclude that the "ultimate question for disposition" posed by appellees' argument that the presumption is unconstitutional on its face is not substantially different from that presented by their claim in the state courts to the effect that the statute is unconstitutional as applied. The fundamental question in either case is whether there exists a sufficient empirical connection between the "proved fact," here the presence in a car of a gun, and the "presumed fact," here its possession by all occupants of the car. Compare *Leary v. United States,* 395 U.S. 6, 29–54, 89 S.Ct. 1532 (1969) (facial constitutionality of a presumption), with *Turner v. United States,* 396 U.S. 398, 418–19 & n. 39, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) (constitutionality as applied). While the factual inquiry may be somewhat more constrained in an "as applied" adjudication, see p. 1010 *infra,* New York certainly cannot complain that its courts have not had the "first opportunity" to rule on the legislative facts underlying its presumption.[10]

---

9. The memos of law submitted by the appellees to the New York trial and appellate courts each contained the following passages:

"Second, if the presumption is applicable here, then it is unconstitutional as applied.

"In *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Supreme Court held that a presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proven fact upon which it is made to depend. Id. at 36, 89 S.Ct. 1532. . . .

"Assuming that the presumption is constitutional on its face, (*People v. De Leon,* 32 N.Y.2d 944, 347 N.Y.S.2d 203, 300 N.E.2d 734 (1973), it is clearly unconstitutional as applied. There can be no 'substantial assurance' that a defendant in a car is more likely than not to know what is on the person of other occupants of the car. . . .

"In conclusion, it is apparent that the statutory presumption set out in § 265.15 cannot apply to those who were merely occupants of this car. This is so both statutorily and constitutionally. . . ."

We note that even though these papers do not explicitly argue the facial constitutionality of the presumption, the state was uncertain dur-

ing oral argument as to whether the issue had been raised. However, because habeas corpus petitioners bear the burden of demonstrating that they have exhausted state remedies, e. g., *Baldwin v. Lewis,* 442 F.2d 29, 35 (7th Cir. 1971); *Bond v. Oklahoma,* 546 F.2d 1369, 1377 (10th Cir. 1976), we will assume that the issue was not pressed apart from the appellees' contentions regarding the presumption's constitutionality as applied.

10. The substantial equivalence of the claims asserted before the state and federal courts in this case is apparent by contrast to those cases in which this court has found that a new claim has been presented in a federal habeas corpus proceeding. See, e. g., *Fielding v. LeFevre,* 548 F.2d 1102 (2d Cir. 1977) (a state court claim that sentence was excessively harsh not the equivalent of a habeas claim that the trial judge had chilled exercise of right to trial); *Mayer v. Moeykens,* 494 F.2d 855, 858–59 (2d Cir.), *cert. denied,* 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974) (claim that police lacked probable cause for an arrest different from claim that warrant was insufficient); *United States ex rel. Nelson v. Zelker,* 465 F.2d 1121, 1125 (2d Cir.), *cert. denied,* 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972) (argument that joint trial of co-conspirators constituted a denial of due

Our conclusion that the issue of the presumption's constitutionality has been "fairly presented to the state courts" is wholly consistent with the equitable nature of the exhaustion requirement. This prerequisite to the writ should not be construed as the functional equivalent of the formalities associated with common law pleading. "The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement.'" *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). "The exhaustion requirement is merely an accommodation of our federal system designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Wilwording v. Swenson, supra,* 404 U.S. at 250, 92 S.Ct. at 408. In this case, New York has had an "initial opportunity" to rule on the rationality of the connection between presence in a car with a gun and possession of it; to require more would not serve the interests of federalism but would undermine habeas corpus as a "swift and imperative remedy."

Moreover, it is readily apparent that an application for state collateral review in the present case would be a wholly futile exercise. First of all, since the New York Court of Appeals has refused to declare the presumption unconstitutional as applied to a situation in which weapons, although in the same car as the occupants, were in the handbag of another person (Doe), it is inconceivable that that court would reverse its field to hold that the statutory presumption, which may be applied in circumstances less favorable to the occupants than those present here, is nevertheless facially unconstitutional. Secondly, in *Stubbs v. Smith,* 533 F.2d 64 (2d Cir. 1976), although we found it unnecessary to pass upon the merits of a habeas petitioner's constitutional challenge to the very presumption before us, we declined to require the petitioner to exhaust state court remedies on that issue, even though he had not previously raised it, since the New York Court of Appeals had already rejected the substance of the petitioner's legal position in previous cases, see *People v. Russo,* 303 N.Y. 673, 102 N.E.2d 834 (1951); *People v. Leyva,* 38 N.Y.2d 160, 341 N.E.2d 546, 379 N.Y.S.2d 30 (1975), and it had given no indication at the time of his federal petition that it would reconsider its previous holdings. 533 F.2d at 69.[11] To require exhaustion in these circumstances would serve no policy associated with federalism, but would frustrate appellees' efforts to recover their liberty promptly.

For closely analogous reasons, we also conclude that appellees have not forfeited the right to argue the facial unconstitution-

process reformed on habeas into a *Brady* claim).

11. Although a New York trial court may entertain a motion to vacate a prior judgment on the ground that it was "obtained in violation of a right of the defendant under the constitution . . . of the United States," N.Y.Crim. Proc.L. § 440.10(1)(h), such a motion must be denied if the court finds that no adequate appellate review of the ground for relief occurred because of a defendant's "unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." *Id.* § 440.10(2)(c). In the present case appellees' reasons for not urging the facial unconstitutionality of the statutory presumption are that it was implicit in the constitutional claim raised and that the substance of the claim had been rejected in earlier cases. We believe that in this context appellees would find it extremely difficult, if not impossible, to persuade the state courts to reach the merits of their claim of facial unconstitutionality upon any motion to vacate sentence which we might require them to file.

Such a motion to vacate sentence must also be denied if the trial court finds that "the ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment. . . ." N.Y. Crim.Proc.L. § 440.10(2)(a). If we were to require further recourse to state proceedings, and the state trial court were to find (as would not be unlikely) that the New York Court of Appeals had implicitly disposed of the issue of facial validity when it found the presumption constitutional as applied, the irony would be apparent. State prisoners who by hypothesis, had been told by us that they had failed to present a claim to the state courts would be informed by the state that their claim had already been determined on the merits.

ality of the presumption before the federal courts. See generally *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). They have persistently pressed a substantially equivalent position before three different courts in New York, and it would be unreasonable for us to conclude that, although they need not pursue further state remedies because they have already confronted the state courts with the "ultimate question for disposition before us," their efforts were not sufficient to avoid a forfeiture of federal relief. *Wainwright,,* which represents the Supreme Court's latest word on procedural forfeitures in habeas cases, although severely limiting the applicability of the *Fay v. Noia* "deliberate bypass" standard, is consistent with our decision on this issue. In *Wainwright* the petitioner sought habeas relief on the ground that a confession read into evidence at his state court trial had been obtained in violation of his *Miranda* rights. However, he had failed to object to its admission at the trial. The Supreme Court held that the failure to comply with Florida's "contemporaneous objection" rule barred federal habeas corpus review of his *Miranda* claim, absent any showing of "cause" for the procedural default and "prejudice" resulting from it. The Court explained that its new standard for procedural forfeitures was justified because Florida's rule "deserves greater respect than *Fay* gives it, both for the fact that it is employed by a coordinate jurisdiction within the federal system and for the many interests which it serves in its own right"—chiefly the advantages that flow from informing a trial judge of the possibility of constitutional error at a time when action can be taken to correct it. 433 U.S. at 88, 97 S.Ct. at 2507.

Here, neither *Wainwright* rationale is implicated. As we indicated above, whatever federalism interest New York may have had in a first opportunity to pass on the facial validity of its presumption was fully vindicated when the New York Court of Appeals was presented with the claim that it was unconstitutional as applied. More

over, to consider the facial validity of the presumption here would not jeopardize the orderly presentation of claims of constitutional error to the New York trial courts; the State has never argued that it was not alerted to the possibility that its statute could not be used against the appellees in time to take appropriate action during their trial.

Having concluded that the question of the constitutionality of the New York presumption on its face is properly before us, we turn to the merits.

The substantial equivalent of the New York presumption of possession of a weapon by occupants of an automobile based upon its presence in the car was first enacted in 1936,[12] some years before a series of Supreme Court cases redefined the constitutional standards by which statutory presumptions are to be judged. When the legislature first acted, the most current statement of the law was *Morrison v. California*, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934), a case in which the defendants were charged with violation of a statute prohibiting alien possession of agricultural property and the Court considered the constitutionality of a California statute which shifted to them the burden of proving their citizenship or eligibility for it once the State had shown that they possessed agricultural property. Justice Cardozo's opinion explained that the constitutionality of presumptions or regulations of the burden of proof depended on a variety of circumstances, of which two were paramount:

"For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance . . . or if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception." 291 U.S. at 90–91, 54 S.Ct. at 285.

---

12. 1936 N.Y.Laws, ch. 390.

However, in *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), decided seven years after the enactment of the New York presumption here at issue, the Court, in nullifying a statutory presumption to the effect that possession of a firearm shall be presumptive evidence of its transportation or receipt in interstate commerce, shifted its position on the permissible justifications for presumptions:

"[T]he due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated. The question is whether, in this instance, the Act transgresses those limits.

"The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience.

. . . .

"Nor can the fact that the defendant has the better means of information, standing alone, justify the creation of such a presumption. In every criminal case the defendant has at least an equal familiarity with the facts and in most a greater familiarity with them than the prosecution. It might, therefore, be argued that to place upon all defendants in criminal cases the burden of going forward with the evidence would be proper. But the argument proves too much. If it were sound, the legislature might validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt. This is not permissible. . . .

"Doubtless the defendants in these cases knew better than anyone else whether they acquired the firearms or ammunition in interstate commerce. It would, therefore, be a convenience to the Government to rely upon the presumption and cast on the defendants the burden of coming forward with evidence to rebut it. But, as we have shown, it is not permissible thus to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation. The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship." 319 U.S. 467–68, 469–70, 63 S.Ct. 1245.

Subsequent cases echo *Tot* and leave no doubt that a state may not erect a presumption simply because evidence of a fact necessary for a criminal conviction is more likely to be available to a defendant than to the prosecution. *Leary v. United States*, 395 U.S. 6, 32–34, 44–45, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Turner v. United States*, 396 U.S. 398, 408 n. 8, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Barnes v. United States*, 412 U.S. 837, 846 n. 11, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).[13]

13. The Supreme Court has also repudiated the notion that merely because the legislature could criminalize an act it may make that act presumptive evidence of a criminal offense. *Tot v. United States, supra*, 319 U.S. at 472, 63 S.Ct. 1241; *Leary v. United States, supra*, 395 U.S. at 34, 37, 89 S.Ct. 1532; *United States v.* *Romano*, 382 U.S. 136, 142–44, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *Turner v. United States, supra*, 396 U.S. at 407–08 n. 8, 90 S.Ct. 642. Here, therefore, it does not matter whether New York might have made presence in a car with a gun criminal.

■ Beginning with *Tot,* therefore, the Supreme Court has emphasized that the constitutionality of a statutory presumption turns on the substantiality of the relation between the fact activating the presumption (the proved fact) and the presumed fact. In *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), and *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965), the Court applied without much elaboration the *Tot* test, which required simply that there be "no rational connection between the fact proved and the ultimate fact presumed," to two federal statutes that "deemed" presence near a still to be sufficient evidence of crimes involving illegal distilling operations. In *Gainey* the Court found the requisite "rational connection" between presence near a still and the broad substantive offense of "carrying on the business of a distiller." In *Romano,* by contrast, the Court noted that the crime of possession was a much narrower offense than that at issue in *Gainey,* and concluded that the relation between presence near and possession of a still was "too tenuous to permit a reasonable inference of guilt—'the inference of the one from proof of the other is arbitrary' . . . *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241." 382 U.S. at 141, 86 S.Ct. at 282.

In *Leary v. United States, supra,* the Court undertook to clarify the meaning of the *Tot* rational connection standard. After reviewing its cases, the Court summarized their teachings as follows:

"The upshot of *Tot, Gainey,* and *Romano* is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made

to depend." 395 U.S. at 36, 89 S.Ct. at 1548.

Applying this standard, the Court declared invalid a statutory presumption, 21 U.S.C. § 176a, authorizing the jury to infer from a person's possession of marijuana that the defendant had knowledge of its unlawful importation into the United States.[14]

*Leary's* reasoning elucidates the judicial inquiry that must be undertaken when a presumption is challenged as unconstitutional. The Court noted that "the congressional determination favoring the particular presumption must, of course, weigh heavily," 395 U.S. at 36, 89 S.Ct. at 1548, but it engaged in a lengthy independent discussion of the documentary evidence bearing on the sources of marijuana consumed in this country—and their relative importance—and the likelihood that a possessor of that drug would be aware of its origins, *id.* at 37–54, 89 S.Ct. 1532. The clear implication was that appellate courts may not simply accept on faith a legislative assertion that proved and presumed facts are related; rather, it must satisfy itself, with facts developed through judicial notice if necessary, see *United States v. Gonzalez,* 442 F.2d 698, 707 & n. 4 (2d Cir. 1971) (en banc), *cert. denied sub nom. Ovalle v. United States,* 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971), of a presumption's empirical validity.

Finally, in *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Court applied the analysis unveiled in *Leary* to a variety of similar statutory presumptions involving heroin and cocaine. The first principle of *Leary* was reiterated: A presumption must be declared unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from

**14.** The Court also raised the possibility that a presumption satisfying the "more likely than not" test might also be required to satisfy the criminal "reasonable doubt" standard if proof of the crime charged or an essential element thereof depended upon the presumption's use, but declined to reach the issue because the presumption at issue failed to meet even the less stringent test. 395 U.S. at 36 n. 64, 89 S.Ct. 1532. We decline to reach this issue in this case for the same reason; we hold that New York's presumption does not satisfy the "more likely than not" test.

the proved fact," 396 U.S. at 405, 90 S.Ct. at 646.[15]

▪ Under the New York statutory presumption at issue in the present case the presence of a gun in a car (the proved fact) constitutes "presumptive evidence" of its possession by all persons occupying the car (the presumed fact). N.Y.Penal Law § 10.-00(8) defines the term "Possess" as meaning "to have physical possession or otherwise to exercise dominion or control over tangible property,"[16] and this definition has been restated in cases involving firearms as requiring that the gun be "within the immediate control and reach of the accused, and where it is available for unlawful use if he so desires." E. g., *People v. Lemmons*, 40 N.Y.2d 505, 509–10, 387 N.Y.S.2d 97, 100, 354 N.E.2d 836 (1976); *People v. Lo Turco*, 256 App.Div. 1098, 11 N.Y.S.2d 644, *affd.*, 280 N.Y. 844, 21 N.E.2d 888 (1939).

Applying the standards established by the Supreme Court, this statutory presumption must be declared unconstitutional on its face unless it can be said with substantial assurance that an inference of possession (as thus defined) of a gun by a car's occupants is more likely than not to flow from the gun's presence in the vehicle. We fail to find any rational basis for such an inference, either in logic or experience. There is nothing about the simultaneous presence of occupants and a gun in an automobile that makes it more likely than not that the former control the latter or that they even know of its presence. The presumption obviously sweeps within its compass (1) many occupants who may not know they are riding with a gun (which may be out of their sight), and (2) many who may be aware of the presence of the gun but not permitted access to it. Nothing about a gun, which

may be only a few inches in length (e. g., a Baretta or Derringer) and concealed under a seat, in a glove compartment or beyond the reach of all but one of the car's occupants, assures that its presence is known to occupants who may be hitchhikers or other casual passengers, much less that they have any dominion or control over it.[17] Although New York has created exceptions to the presumption for three situations in which it would be especially anomalous to infer possession—where the gun is found upon the person of one of the occupants, where the weapon is found in an automobile being operated for hire by a licensed driver, and where one of the occupants has a license to carry the weapon—the presumption remains irrational in that class of cases in which it does apply.

Indeed, this case is strikingly similar to *United States v. Romano, supra*, in which the Court struck down a federal presumption deeming presence near a still sufficient evidence to sustain a conviction for possession, custody or control of that still. See 26 U.S.C. § 5601(a)(1), (b) (1970) (since amended). Just as the *Romano* Court noted that presence near a still is not a wholly innocent circumstance, we would agree that the presence of a gun in a car may cast some suspicion on all of its occupants. Even so, *Romano* said

> "Presence tells us only that the defendant was there and very likely played a part in the illicit scheme. . . . Presence is relevant and admissible evidence in a trial on a possession charge; but absent some showing of the defendant's function at the still, its connection with possession is too tenuous to permit a reasonable inference of guilt—'the inference of the one from proof of the other is arbitrary.

---

**15.** Later, in *Barnes v. United States*, 412 U.S. 837, 841–43, 845 n. 8, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the Court reviewed the standards governing statutory presumptions and made them broadly applicable to so-called "common law inferences"—permissible inferences charged by a trial judge without specific statutory authorization.

**16.** The jury in this case was charged with this definition.

**17.** In fact, during the trial of this case, the jury was charged pursuant to parallel presumptions that they could infer that all four occupants of the car had possession of heroin and a machine gun found in the trunk of the car, see note 3, *supra*, even though a key to the trunk was never recovered from any of them. The jury acquitted all of the defendants on these counts.

. . . .' *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 124." 382 U.S. at 141, 86 S.Ct. at 282.

By the same token, in this case presence would be relevant and admissible evidence in a trial on a firearm possession charge. But absent some additional showing, its connection with possession is too tenuous to permit a reasonable inference of guilt.

Although we are cognizant of the sensitive nature of our function in this case, that of reviewing the constitutional validity of a state statute, and of the deference ordinarily due to legislative judgments regarding the connection between proven and presumed facts, see p. 1006, *supra*, we find the State's efforts to justify this statute to be without merit. Although the State asserts that this presumption meets the *Leary* test, the only background for this statute to which we have been referred indicates that it was passed to facilitate prosecution of the alleged crime by forcing occupants of a car to come forward with evidence regarding possession and not because of any empirical association between the presumed fact and the proved fact. For example, the New York Court of Appeals' opinion in this case remarked,

"To resolve the issue, we first look to the history underlying the statute. . . . Under traditional rules, developed in a motorless age, criminal possession of a weapon was not established unless the weapon was 'within the immediate control and reach of the accused, and where it is available for unlawful use if he so desires'. (*People v. Persce,* 204 N.Y. 397, 402, 97 N.E. 877, 878.) Difficulties arose when a weapon was found secreted under the seat, in the glove compartment or in the trunk of an occupied automobile. Traditional analysis precluded a finding that any of several occupants of the automobile was sufficiently close to the weapon as to be in actual possession of it. For example, in one 1930 case, the police in-

tercepted an automobile and found a revolver under the driver's seat. The court, in applying the relevant standards, was compelled to release all defendants for failure to sufficiently establish possession. (*People ex rel. De Feo v. Warden,* 136 Misc. 836, 241 N.Y.S. 63.) The court remarked, however, that the case and other similar situations 'establishes the urgent need for legislation making the presence of a forbidden firearm in an automobile or other vehicle presumptive evidence of its possession by all the occupants thereof. Such an amendment would require the occupants of an automobile to explain the presence of the firearm and enable the court to fix the criminal responsibility for its possession.' (136 Misc. 836, 241 N.Y.S. 63.) In 1936, the Legislature took heed of this suggestion and enacted section 1898-a of the former Penal Law providing that all persons in an automobile at the time a weapon is found in the vehicle are presumed to be in illegal possession of the weapon. (L.1936, ch. 390.)" 40 N.Y.2d at 509–11, 387 N.Y.S.2d at 100, 354 N.E.2d at 839.

But the notion that a presumption may be created simply because defendants may have superior access to relevant evidence was abandoned in *Tot* and has never been revived. The New York Court's opinion does not assert that possession of a gun and occupancy of a car containing it are closely linked; on the contrary, the opinion notes that "traditional analysis *precluded a finding* that any of several occupants of the automobile was sufficiently close to the weapon as to be in actual possession of it." *Id.* (emphasis added). In short, nothing in the *Lemmons* decision or others upholding the presumption demonstrates that the state courts or legislature have ever attempted to justify this firearm presumption as *Leary* requires. See also *People v. Russo,* 278 App.Div. 98, 103 N.Y.S.2d 603, *affd.,* 303 N.Y. 673, 102 N.E.2d 834 (1951).[18]

18. In *People v. Leyva*, 38 N.Y.2d 160, 379 N.Y. S.2d 30, 341 N.E.2d 546 (1975), the New York Court of Appeals did uphold a parallel presumption, which made the presence in a car of a controlled substance presumptive evidence of its knowing possession by all the car's occupants, N.Y.Penal L. § 220.25; see also *Leyva v. Superintendent,* 428 F.Supp. 1 (E.D.N.Y.1977), and its opinion was somewhat more sensitive than *Lemmons* to the nature of the *Leary* test.

Appellant's reliance on *People v. Terra,* 303 N.Y. 332, 102 N.E.2d 576 (1951), *app. dismissed,* 342 U.S. 938, 72 S.Ct. 561, 96 L.Ed. 698 (1952), in which the Supreme Court dismissed for lack of a substantial federal question a case in which a somewhat similar presumption—making the presence in a room of a machine gun presumptive evidence of its possession by all occupants of the room—had been upheld by the New York Court of Appeals, is misplaced. Apart from the fact that the Supreme Court's disposition in *Terra* predated *Gainey, Romano, Leary,* and *Turner,* the case is clearly distinguishable.[19] In *Terra,* the New York court defined "persons who occupy a room" very narrowly, as encompassing only individuals "who either reside in it or use it in the conduct and operation of a business or other venture." 303 N.Y. at 335, 102 N.E.2d 576, 578. With the class of person to whom the presumption could apply so circumscribed, the *Terra* court could rationally conclude that such people would be more likely than not to know what was in a room and enjoy sole or joint possession of its contents. By contrast, in this case, the term "persons occupying" a car extends indiscriminately to casual passengers and others with no long-term association with it. Thus, the similarity between the presumption involved in *Terra* and the one before us is more verbal than real.

Finally, contrary to the State's assertion, it makes no difference that the presumption before us is rebuttable. *Tot, Gainey, Romano, Leary,* and *Turner* all involved rebuttable presumptions. The evil of the presumptions that the Supreme Court has struck down has not been that they could

not be dispelled, but rather that they forced defendants to meet inferences that could not rationally be drawn from the facts proved.

For these reasons we hold that, because it cannot be said with substantial assurance that the presumed fact (possession of a gun by occupants of an automobile) is more likely than not to flow from the proven fact (presence of the gun in the car) the New York presumption making the latter "presumptive evidence" of the former is unconstitutional on its face.

For several reasons we consider it inadvisable to limit our decision, as did the district court, to a holding that the statutory presumption at issue is unconstitutional as applied to the facts of this case. At first blush such an approach has some appeal because it would appear to enable us to avoid possible exacerbation of federal-state relations arising out of our nullification of a state statute by focusing attention narrowly on a set of specific facts, Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 844–45 (1970), and requiring that we determine only whether the particular conduct before us is immune and not whether the statute could lawfully be applied to other hypothetical circumstances.

Where the empirical connection between the proved and presumed facts turns on the presence or absence of one or two clearly identifiable circumstances which were left unmentioned by the legislature, e. g., the type and amount of a drug possessed by a defendant, see *Turner v. United States,* 396 U.S. 398, 415–18, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), we have not hesitated to limit ourselves to an "as applied" holding, upholding the validity of such a statute where

Without expressing any opinion on the validity of *Leyva,* we note the following distinctions between that case and this one: First, the *Leyva* court had before it a report indicating that the New York legislature may have actually found the connection required by *Leary.* See 38 N.Y.2d at 166–67, 379 N.Y.S.2d 30, 341 N.E.2d 546. Here, we have been shown nothing suggesting that the legislature made any such judgment. Second, the *Leyva* court adopted that report's suggestion that anyone transporting large quantities of drugs would be

very unlikely to allow a person not in joint possession to accompany him. Here, a gun—while not wholly innocent—is not so incriminating that one would decline to allow those not having custody of it to ride with it. Finally, it is significant that Judge Fuchsberg, who wrote the majority opinion in *Leyva,* dissented from the New York court's decision in this case.

19. We express no opinion on whether *Terra* remains viable in view of these Supreme Court cases.

the condition is met, see, e. g., *United States v. Gonzalez,* 442 F.2d 698 (2d Cir.) (en banc) *cert. denied, sub nom. Ovalle v. United States,* 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971) (over 1 kilogram of cocaine). But when the empirical relationship between proved and presumed facts turns, as in the present case, on a variety of circumstances and on the largely unpredictable combinations in which they occur, the "as applied" approach resembles more a holding as to the sufficiency of the evidence than the "more likely than not" determination required by *Leary.*[20] Such a particularized analysis of the applicability of a presumption would involve us in the nature and quality of the evidence required to uphold a conviction under state law—an issue which we normally eschew on consideration of habeas petitions. E. g., *Terry v. Henderson,* 462 F.2d 1125, 1131 (2d Cir. 1972); *United States ex rel. Griffin v. Martin,* 409 F.2d 1300, 1302 (2d Cir. 1969); *United States ex rel. Mintzer v. Dros,* 403 F.2d 42 (2d Cir. 1967), *cert. denied,* 390 U.S. 1044, 88 S.Ct. 1643, 20 L.Ed.2d 305 (1968).[21]

With these considerations in mind we believe that it would be inappropriate for us in effect to determine whether a more narrowly drawn New York presumption, limited to a more restricted class of cases than that delineated by the state legislature, might be upheld and, if so, whether the present case would fall inside or outside of the more confined area. Absent direct evidence, an inference of joint possession on the part of occupants depends on many variables, including the number of occupants of the car, the nature of the relationships between them, their ownership or past use of the automobile, their familiarity with it, the size of the vehicle and the size, location and visibility of the gun. The weight to be given to evidence of one or more of many relevant factors, moreover, would turn on the credibility extended to the proof. While we might agree with the district court in this case that the statutory presumption is unconstitutional as applied to the three petitioners, in view of the evidence that the guns (one concealed and one partially exposed) were in Doe's handbag resting on the floor between her and the right front door, we would not want to hypothesize as to which was the pivotal circumstance—the location and ownership of the bag, the position of the bag, the partial exposure of one of the guns or the number of the occupants. The fruitlessness of this approach, which bears all the earmarks of a review of evidence for sufficiency, is readily apparent. In effect the validity of the presumption would be upheld only in instances where the evidence would, independent of the statute, support an inference of possession. For this reason there would be no point in an attempt to save the statutory presumption in part by adding conditions which neither the New York legislature nor the New York Court of Appeals have chosen to supply.

**20.** In *United States v. Tavoularis,* 515 F.2d 1070 (2d Cir. 1975), for example, this court considered the permissibility of an inference that the defendants knew that treasury bills had been stolen from a bank based on their possession of those bills. The court's discussion of *Leary* and the other relevant precedents was positioned in that portion of the opinion dealing with the sufficiency of the evidence in the case. 515 F.2d at 1074–77.

**21.** With due respect, Judge Timbers" characteristically thoughtful opinion tends to underestimate the nature of our reliance on these decisions. Viewed broadly, they reflect the principle that federal courts "are bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." *Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). If we were to adopt the solution to this case suggested by Judge Timbers, however, every prisoner to whom this presumption had been applied could effectively challenge the sufficiency of the evidence in his case by claiming that that evidence was insufficient to support the use of the presumption against him. Rather than allow the wholesale conversion of state law issues into due process questions, we have chosen to follow the Supreme Court's holdings in *Leary, Tot, Romano* and *Gainey* in deciding the validity of New York's statute on its face. These cases establish that this mode of adjudication is not limited to situations in which First Amendment values are implicated.

Accordingly we hold that New York's presumption lacks the requisite empirical connection between proved and presumed facts in the class of cases to which the legislature made it applicable. As a result, appellees were denied a fair trial when the jury was charged that they could rely on the presumption in finding possession.

The issuance of the writs of habeas corpus by the district court is affirmed.

TIMBERS, Circuit Judge, concurring:

I agree that the judgment of the district court should be affirmed. But I would affirm on the ground that N.Y.Penal Law § 265.15(3) (McKinney 1976–77 Supp.) is unconstitutional *as applied*. That is the ground of Judge Owen's holding. I would not reach the issue as to whether the statute is unconstitutional on its face.

I take it that it is common ground that normally a court should scrutinize the constitutionality of a statute only as applied in the case before it. *Broadrick v. Oklahoma,* 413 U.S. 601, 610–12 (1973); *United States v. Raines,* 362 U.S. 17, 21 (1960); *Ashwander v. TVA,* 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). It is in the unusual case, such as where the very existence of a statute would chill activity protected by the First Amendment, that other principles override the normal considerations of restraint. See Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 852 (1970). ("[D]eparture from the normal method of judging the constitutionality of statutes must find justification in the favored status of rights to expression and association in the constitutional scheme.") The difficulties concomitant to an analysis of the facts of a particular case should not impel us unnecessarily to reach a holding with respect to the constitutionality of a statute on its face.

The majority acknowledges that "[w]here the empirical connection between the proved and presumed facts turns on the presence or absence of one or two clearly identifiable circumstances which were left unmentioned by the legislature . . . we have not hesitated to limit ourselves to an 'as applied' holding, upholding the validity of such a statute where the condition is met. . . ." But the majority then advances what strikes me as the novel proposition that "when the empirical relationship between proved and presumed facts turns . . . on a variety of circumstances and on the . . . combinations in which they occur, the 'as applied' approach resembles more a holding as to the sufficiency of the evidence than the 'more likely than not' determination . . . ." Since the majority correctly notes that we eschew passing on the sufficiency of evidence in habeas corpus proceedings, I should have thought that we would avoid such an approach to constitutional adjudication.

With deference I suggest that the majority's reliance on this Circuit's refusal to consider the sufficiency of evidence in habeas proceedings is misplaced. We have avoided consideration of claims regarding the sufficiency of evidence to uphold a state court conviction because they are "essentially . . . question[s] of state law and [do] not rise to federal constitutional dimensions." *Terry v. Henderson,* 462 F.2d 1125, 1131 (2 Cir. 1972); see also *United States ex rel. Griffin v. Martin,* 409 F.2d 1300, 1302 (2 Cir. 1969). This reluctance stems from a desire to avoid intrusion into matters properly the province of the state courts. Furthermore, it has the virtue of prudently avoiding unnecessary constitutional showdowns. In the instant case, these very considerations should stay our hand from precipitously striking down the New York presumption wholesale—the most extreme form of exacerbation of federal-state relations. See Note, The First Amendment Overbreadth Doctrine, *supra,* 83 Harv.L. Rev. at 849-52.

Finally, no protected activity would be impaired here by our allowing the presumption to operate where it may do so constitutionally.[1] Any future abuse of the pre-

---

1. In its discussion of *People v. Terra,* pages 1009, *supra,* the majority without ruling on the issue appears to acknowledge that in *some* situations the statutory presumption would be valid.

sumption may be remedied when and if it occurs, in which event I would be willing to do so on the basis of Judge Mansfield's thoughtful analysis of the constitutionality issue as set forth above in the majority opinion.