William STUBBS, Appellant,

v.

H. J. SMITH, Superintendent, Attica
Correctional Facility, Appellee.

No. 517, Docket 75–2124.

United States Court of Appeals,
Second Circuit.

Argued Dec. 11, 1975.

Decided April 2, 1976.

Richard A. Greenberg, The Legal Aid Society, New York City (William J. Gallagher, New York City, of counsel), for appellant.

Rhonda Amkraut Bayer, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for appellee.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a denial of a writ of habeas corpus in respect to a state court conviction for unlawful possession of a loaded firearm.[1] Appellant seeks to raise the question of the constitutionality of the New York statutory presumption of possession of a weapon based on presence in an automobile where such weapon is found.[2] He appeals from an order of the United States District Court for the Western District of New York, John T. Curtin, *Judge,* denying his petition for the writ. The State contends that the question of constitutionality was not raised either in the district court or in the state courts and that in any event it was waived by failure to object to the charge of the statutory presumption to the jury; the State also suggests that in the light of the evidence the charge of the statutory presumption was at most only harmless error. We affirm.

Appellant was convicted after a jury trial in Monroe County Court, New York, of the crimes of assault in the first degree and unlawful possession of a loaded firearm.

---

1. Appellant was convicted under N.Y. Penal Law 1909 § 1897(2), now N.Y. Penal Law § 265.02(4) (McKinney Supp.1975), which provided:

   Any person who has in his possession any firearm which is loaded with ammunition, or who has in his possession any firearm and, at the same time, has in his possession a quantity of ammunition which may be used to discharge such firearm is guilty of a felony. Such possession shall not, except as provided in subdivision three of this section, constitute a felony if such possession takes place in such person's home or place of business.

2. N.Y. Penal Law 1909 § 1899(3), now N.Y. Penal Law § 265.15(3) (McKinney Supp.1975), provided:

   The presence in an automobile, other than a stolen one or a public omnibus, of any firearm, defaced firearm, firearm silencer, bomb, bombshell, gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckles, sandbag, sandclub or slungshot [*sic*] is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except under the following circumstances: (a) if such weapon, instrument or appliance is found upon the person of one of the occupants therein; (b) if such weapon, instrument or appliance is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful and proper pursuit of his trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol, or revolver and one of the occupants, not present under duress, has in his possession a valid license to have and carry concealed the same.

He was sentenced as a second felony offender to consecutive terms of imprisonment of 13 to 14 years on the weapon charge and 19 to 20 years on the assault.[3] After the presentation of evidence which will be set forth below, appellant's counsel requested and was granted a charge to the effect that one element of the crime of possession is that the possession has to be knowing. The State then requested and was granted a charge under then § 1899(3) of the New York Penal Law, note 2 *supra,* that a gun found in a car may be presumed to be possessed by every occupant.[4] No objection was taken to the charge of the presumption, and the argument that the statute was unconstitutional was not made on appeal to the Appellate Division, which affirmed the conviction, 30 A.D.2d 777, 292 N.Y.S.2d 375 (1968); reargument was denied, 30 A.D.2d 932, 293 N.Y.S.2d 758 (1968), leave to appeal denied by the New York Court of Appeals, and certiorari denied, 393 U.S. 1108, 89 S.Ct. 918, 21 L.Ed.2d 804 (1969).

The evidence at the Monroe County Court trial was that on March 29, 1966, Mark Wunder, a man with considerable military experience in World War II, heard his dog barking shortly after 9:00 p. m. He let his dog out and, when she continued barking quite a bit, he stepped outside to investigate. As they walked along an arborvitae hedge, the dog sniffing excitedly, Wunder saw a man who was crouched wearing an Army-type parka with a hood. The man stood up and left hurriedly, and Wunder followed him, seeing him with his face illuminated by a street light at about 50 feet. Now at a trot, Wunder yelled for help from his next-door neighbor, a New York detective, Lt. George Reiss, and continued to pursue the prowler, whom he subsequently identified as appellant Stubbs. Stubbs turned, covering the lower part of his face with a dark or black cloth, and told Wunder not to follow him any more. Wunder stopped briefly and then, as he continued to follow, Stubbs turned and fired a gun at him. Wunder then tried "to get distance between us," and heard bullets from a second and a third shot whiz closely by. After noting the direction of Stubbs' flight Wunder ran back to Lt. Reiss's house. Reiss got his own gun, and the two got into an unmarked police car he had at home at the time and drove to where Wunder had last seen appellant. They observed a dark colored 1957 or 1958 Cadillac cruising slowly, with an "LN" license plate, driven by a blond woman with a ponytail. After tailing the Cadillac for some blocks Lt. Reiss took Wunder home to notify the police of his assailant's description. Wunder then got his own licensed pistol and his own car to cruise in search of his assailant. Reiss continued to drive around and, spotting the same Cadillac driving slowly, observed it pull into the driveway at the Mt. Hope Shopping Center. There Reiss saw a figure moving swiftly about five or six feet behind the car going toward the driver's side. The figure was short, stocky and wearing a three-quarter length, dark-colored parka with a hood, thus fitting the description of the prowler given to him by Wunder. The suspect got into the driver's seat and the Cadillac drove directly out in front of Lt. Reiss, who noted that it did have the same license plate that he had previously seen. He radioed in to other police cars requesting assistance to set up a road block. The Cadillac picked up speed with Reiss following 50 to 60 feet back for seven or eight blocks until a police car with its flasher on

---

**3.** Appellant's successful challenge in this court to the predicate conviction, *United States ex rel. Stubbs v. Mancusi,* 442 F.2d 561 (2d Cir. 1971), was reversed, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972).

**4.** The charge given was:
I'll charge that: Section 1899 of the Penal Law says that the finding of a gun in an automobile is presumptive evidence that the gun was possessed by all persons in that car; in short, the law says, the locating of a gun in the car means that it may be presumed, if you are satisfied the gun was so found, it may be presumed by you as a Jury that the gun was in the possession, specifically in this case, passengers are not involved, the accused here is, you may presume that the gun was in the possession of the owner-occupant driver of the car.

stopped the Cadillac. Reiss ordered the driver out of the car at gunpoint and placed him under arrest. That man was appellant Stubbs. His blond ponytailed companion, Shirley Miller, was also arrested and later indicted with him. Reiss searched Stubbs immediately, finding a "black kerchief cloth" in his pocket, and then searched the vehicle, finding a .22 caliber revolver loaded with six .22 caliber rounds in a holster in the glove compartment. The Cadillac turned out to be registered to and owned by Stubbs. Also found in the glove compartment was a belt containing cartridges for a .22 caliber revolver; three loops of the belt happened to be empty. One bullet from the belt was test-fired and the cartridges in the belt were of the same ammunition as those in the revolver. Additionally two boxes of .22 long rifle ammunition were found in the glove compartment. The foregoing evidence stood uncontradicted as the defense called no witnesses.

Before the trial codefendant Shirley Miller pleaded guilty to possession of a weapon as a misdemeanor and received a one-year prison term. Prior to imposition of sentence on appellant Stubbs on October 7, 1966, he spoke on his own behalf and objected to the fact that he had been convicted of possession of a weapon when "no evidence shows it belonged to him, or he knew of its existence, when another person has pleaded guilty to the ownership and possession of the same .22 caliber revolver," a fact which the jury never knew. The court denied his "motion."

In the federal district court the instant pro se habeas corpus petition stated that there was

no evidence submitted that the petitioner knew anything about this firearm in his car, [and] the trial judge still failed to inform the jury that the petitioner had a codefendant, and went on to charge the jury on the illegal possession count as if the petitioner was in the car by himself.

Appointed counsel in the district court raised two issues.[5] We are concerned here only with the substance of one of them: whether the use of the presumption of possession where a codefendant has already pleaded guilty to possession of the weapon is a violation of due process.

Appellant argues here that the New York statutory presumption, which has been held to be constitutional by the New York courts in the past,[6] is irrational or arbitrary and hence unconstitutional under the test of *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 81 (1969). The State alleges that this issue was never presented to the district court and that we may not therefore review it here. *See United States ex rel. Springle v. Follette,* 435 F.2d 1380, 1384 (2d Cir. 1970), *cert. denied,* 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331 (1971). More specifically, the State contends that the argument below as to the unconstitutionality of the statutory presumption was narrowly limited to the question whether use of the presumption is a denial of due process where a codefendant

5. One issue raised was whether the prosecution suppressed evidence and concealed material information from the defense under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by not informing it of the codefendant's plea of guilty. Judge Curtin properly ruled that the *Brady* claim clearly was not available as the defense knew of the codefendant's plea prior to trial.

6. *People v. Russo,* 278 App.Div, 98, 103 N.Y. S.2d 603, *aff'd,* 303 N.Y. 673, 102 N.E.2d 834 (1951), on authority of *People v. Gerschinsky,* 281 N.Y. 581, 22 N.E.2d 160 (1939), and *People v. Terra,* 303 N.Y. 332, 102 N.E.2d 576 (1951). The last of these expressly referred, 303 N.Y. at 335, 102 N.E.2d at 578, to *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519

(1943), and its "rational connection" test for considering the validity of statutory presumptions. This court in *United States ex rel. Rogalski v. Jackson,* 146 F.2d 251, 253 (2 Cir. 1944) (A. Hand, J.), *cert. denied,* 324 U.S. 873, 65 S.Ct. 1011, 89 L.Ed. 1427 (1945), relied on *Tot* particularly in denying habeas corpus on a claim of unconstitutionality of old § 1898–a, from which § 1899(3), note 2 *supra,* was derived. The *Tot* test has, of course, been modified. *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 81 (1969) (presumed fact must be "more likely than not" to flow from proved fact); *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

has pleaded guilty to possession. It is true, and appellant concedes, that greater emphasis was placed in the court below on the context of the codefendant's plea than has been placed here; the State itself concedes, however, that appellant's assigned counsel urged the district court that "the use of the presumption of possession in [appellant's] case was prejudicial and in violation of his constitutional right to due process of law." In light of the substance of appellant's pro se petition, *see Ham v. North Carolina,* 471 F.2d 406, 407 (4th Cir. 1973), and the language of Judge Curtin's consideration of appellant's due process claim, we reject the State's argument that the issue here is a new one and hence unreviewable.

In his opinion below Judge Curtin first disposed of the claim that the exception to the presumption under § 1899(3)(a) should have applied, *see* note 2 *supra,* by holding that since possession need not be exclusive or actual but may be joint and constructive, Shirley Miller's guilty plea could not be equated with actual possession "upon her person" as required by the § 1899(3)(a) exception. Going on to evaluate the presumption "from a constitutional standpoint," Judge Curtin cited the test of *Barnes v. United States,* 412 U.S. 837, 843, 93 S.Ct. 2357, 2361, 37 L.Ed.2d 380, 386 (1973):

> [I]f a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process.

This reliance upon *Barnes* indicates that the district court did indeed consider whether § 1899(3) conformed to the general constitutional criteria for due process. Judge Curtin did not, however, decide whether the presence of a firearm in an automobile ("the evidence necessary to invoke the inference") was sufficient for a rational juror to find the possession of the firearm by every occupant ("the inferred fact") beyond a reasonable doubt, or even as "more likely than not." Instead he examined the evidence at trial rather than the acceptability of the logic of the statutory inference and held:

> [T]here was sufficient evidence for the jury to conclude beyond a reasonable doubt that the weapon was found in the glove compartment. This, when coupled with the evidence of the [appellant's] involvement in a shooting minutes before, was sufficient for a finding of power to exercise dominion and control of the weapon by [him]. See *Craven v. United States,* 478 F.2d 1329 (6th Cir. 1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973).

Finally, he viewed the charge as a whole and found that the instruction of the presumption, insofar as it mentioned no passengers, fell far below the constitutional threshold of a violation of Fourteenth Amendment rights. See *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973).

A preliminary question remains, however: whether appellant has exhausted his state remedies as he is required to do under 28 U.S.C. § 2254 and the case law, *Braden v. Thirtieth Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443, 449 (1973); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438, 443–44 (1971); *United States ex rel. Irons v. Montanye,* 520 F.2d 646 (2d 1975). Appellant bases his fulfillment of this requirement on his objection at the time of sentencing, *see* text *supra,* and the Appellate Division's statement that it examined "with care the entire record," 30 A.D.2d at 932, 293 N.Y. S.2d 758. This plainly is insufficient evidence of exhaustion of the constitutional claim, and therefore we would have to affirm denial of the habeas petition on that ground unless is would be futile for appellant to have sought state remedies in the light of the New York case law, note 6 *supra.* See, e. g., *Sarzen v. Gaughan,* 489 F.2d 1076, 1082 (1st Cir. 1973); *Ham v. North Carolina, supra,* 471 F.2d at 407–08; *Perry v. Blackledge,* 453 F.2d 856, 857 (4th

Cir. 1971), *aff'd,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). *See also Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418, 421 (1971); Note, *The United States Courts of Appeals—1973–74 Term, Criminal Law and Procedure,* 63 Geo. L.J. 331, 603 (1974).

■ Here, as in *Sarzen v. Gaughan, supra,* two indicators of futility were present when appellant brought his petition in August, 1972: there were decisions by the highest state court rejecting the claim sought to be raised here, *People v. Russo,* 303 N.Y. 673, 102 N.E.2d 834 (1951), and cases cited note 6, *supra,* and there was no indication at the time of the petition that the New York Court of Appeals intended to depart from its former decisions. There was, however, new United States Supreme Court case law, *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and *Leary v. United States, supra,* indicating that the standard of *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), relied on by the New York court in the cases cited in *Russo,* was no longer appropriate. The New York court nonetheless quite recently provided continuing evidence of the futility of exhaustion in appellant's case by unanimously upholding, in an extensive discussion by Judge Fuchsberg, the constitutionality of the statutory presumption of possession of a controlled drug by all persons inside an automobile in which the drug is found. *People v. Leyva,* 38 N.Y.2d 160, 379 N.Y. S.2d 30, 341 N.E.2d 546 (1975) (N.Y. Penal Law § 220.25 upheld in light of *Leary, Turner v. United States, supra, Barnes v. United States, supra, Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and other cases). We are in as good a position tc judge whether an effort to utilize state remedies would be futile as is the district court. In light of *Leyva,* and since this habeas corpus petition was brought in August of 1972, only reaching our court on December 11, 1975, we will give appellant any benefits of the doubt regarding exhaustion.[7]

■ Nevertheless, we would be required to remand if there were an open question whether appellant deliberately waived his Fourteenth Amendment claim by failing to object to the charge at trial. *Fay v. Noia,* 372 U.S. 391, 438–40, 83 S.Ct. 822, 848–50, 9 L.Ed.2d 837, 868–70 (1963); *United States ex rel. Irons v. Montanye, supra,* 520 F.2d at 648–49. Waiver, however, may not be predicated upon omission of a defense or objection where either pertinent facts were unknown to the defendant at the time of trial or appeal or because a controlling case, here *Leary v. United States,* was subsequently decided. *See Reagor v. United States,* 488 F.2d 515, 516 & n. 6 (5th Cir. 1973); *Mitchell v. United States,* 482 F.2d 289, 292 (5th Cir. 1973). That is to say, bypass cannot be had unless there is an intentional relinquishment or abandonment of a known right or a privilege. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). It plainly never occurred to trial counsel, in light of the New York decisions, unquestioned in the Supreme Court at the time, to object to the charge under the statutory presumption at trial or to preserve such an objection on appeal to the Appellate Division. *See United States ex rel. Schaedel v. Follette,* 447 F.2d 1297, 1300 (2d Cir. 1971). No knowing waiver could thus be found under these circumstances.

We come then to the merits of the constitutional claim. Appellant argues, on the strength of *Mullaney v. Wilbur, supra,* and *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970), that

---

**7.** We note that the State argues that appellant's petition should not be heard because he has failed to explain why he did not raise the statutory presumption claim in his previous habeas petition attacking his sentence as a second felony offender, note 3, *supra.* The law is settled to the contrary that a court may entertain successive applications made upon different grounds, *see* 28 U.S.C. § 2244; the burden is on the State to show abuse of the writ and no such showing has been made here. *Sanders v. United States,* 373 U.S. 1, 11, 17–18, 83 S.Ct. 1068, 1075, 1078–1079, 10 L.Ed.2d 148, 158, 162–163 (1963); *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).

the question left open in *Leary,* whether a presumption in a criminal case must satisfy the reasonable doubt standard must be answered in the affirmative, and that § 1899(3) does not meet this requirement. He also argues that § 1899(3) does not even meet the *Leary* test, because it cannot be said with substantial assurance that the presumed fact (possession) is "more likely than not" to flow from the proved fact (presence of gun in car) upon which it is made to depend, 395 U.S. at 36, 89 S.Ct. at 1548, 23 L.Ed.2d at 82.[8]

■ While in a different case it would be necessary to consider whether § 1899(3) satisfies at least the more-likely-than-not standard of *Leary,* the circumstantial evidence of appellant's possession of the weapon here is such that even if use of the presumption in the charge were held to be constitutional error, that error would be harmless. *See Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Here there was evidence that Stubbs owned and as a driver was occupying the automobile at the time the loaded .22 caliber revolver was found in the glove compartment. There was also evidence that he had had a gun in his possession of a few minutes before from which he had fired three shots. Circumstances permitted the inference that he had replaced the three empty chambers in the revolver's cylinder with three bullets from the belt holding .22 caliber cartridges that was also found in the glove compartment of the car. While the State introduced no scientific evidence to prove that the .22 caliber revolver

found in the car had recently been fired, we believe that in this case there was ample evidence from which the jury could infer that the gun in the glove compartment had recently been in Stubbs' possession and was in his possession at the time of his arrest.

Appellant argues that the fact that there may have been ample evidence to infer possession without the aid of the statutory presumption does not help the State because the jury may have disbelieved or disregarded the other evidence of possession and convicted him on the basis solely of the statutory presumption. *See United States v. Romano,* 382 U.S. 136, 138–39, 86 S.Ct. 279, 280–81, 15 L.Ed.2d 210, 212–13 (1965) (conviction for possession of illegal still overturned where presumption of guilt from unexplained presence at site of still was charged). It is true that in *Romano* the court found that although there was evidence of possession aside from presence at the still "sufficient" for conviction, it was still possible that the jury convicted appellant solely on the basis of the presumption and therefore it was necessary to scrutinize the presumption. *Id.* But here the appellant was also convicted by the jury of first degree assault,[9] so that the jury had to have found in connection with that charge that he committed an assault with a deadly weapon, albeit not necessarily the .22 revolver found in the glove compartment. Since the jury must have relied on the evidence of his use of a revolver in order to convict appellant of assault it cannot have disbelieved or disregarded it as circumstantial evidence of guilt on the possession charge, and it would be purely speculative to assume that the jury convicted appellant of possession on the presumption

---

**8.** We note that the Supreme Court said in *Lavine v. Milne,* 424 U.S. 577, 585, 96 S.Ct. 1010, 1016, 47 L.Ed.2d 249, 256, 44 U.S.L.W. 4295, 4298 n. 10 (1976), that cases such as *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969)

reflect the standard rule that the State *does* bear the burden of providing criminal guilt, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and that statutory presumptions

aimed at assisting in that burden must satisfy certain standards of reliability . . . .
(Emphasis original.)

**9.** This count was under N.Y. Penal Law 1909 § 240(1), now N.Y. Penal Law § 120.10(1) (McKinney 1975). As the court charged, to be guilty of assault in the first degree appellant had to have, with intent to kill, fired a pistol "such as the one which has been introduced here" (as a matter of law a dangerous weapon) at Mark Wunder.

alone. There was more evidence of possession here than would be simply "sufficient" for conviction as in *Romano*. The evidence was such that "it is clear beyond a reasonable doubt" that use of the presumption, regardless of its propriety, was harmless. *Schneble v. Florida, supra,* 405 U.S. at 430, 92 S.Ct. at 1059, 31 L.Ed.2d at 344.

Judgment affirmed.