**Bernard GUICHARD, Petitioner,**

v.

**Harold J. SMITH, Warden, Attica Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.**

**No. 78 C 995.**

United States District Court,
E. D. New York.

April 27, 1979.

Bernard Guichard, pro se.

Robert Abrams, Atty. Gen., New York City, for respondents by Gerry Evan Feinberg, Deputy Asst. Atty. Gen., New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner Bernard Guichard, a State prisoner, is currently serving a second-felony offender sentence of 7½ to 15 years imposed following his conviction in Supreme Court, Kings County, for second-degree robbery. He has applied *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, contending that his conviction was obtained in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution. The application is opposed by respondents, who at the court's direction have supplied a transcript of all trial court proceedings as well as copies of the relevant State court appellate briefs.

### FACTS

In the early afternoon of November 6, 1975, a New York City police officer on radio motor patrol duty spotted a beige Vega station wagon that matched the description of a getaway car used by two men who had only moments before robbed the Met Food Store at 631 Gates Avenue in Brooklyn. The officer took chase and, with the assistance of another police unit, soon overtook the Vega wagon. Its two occupants, later identified as Bernard Guichard and Robert Taylor, were placed under arrest; an immediate search of their vehicle revealed $354 in various denominations lying on the floor on the passenger side of the car. Guichard and Taylor were then taken to the 79th Precinct Station House where, in the course of the booking process, both *sua sponte* volunteered that earlier they had been present at the Met supermarket.

Guichard and Taylor were jointly indicted and charged with two counts of first-degree robbery, one count of second-degree robbery, and one count of third-degree grand larceny. Their joint trial commenced on April 26, 1976.

Oliver Johnson, who at the time of the robbery was employed by Met as an unarmed plainclothes security guard, was the principal witness for the prosecution. Johnson testified that he was speaking with a friend at the front of the supermarket when two men, whom he identified as Guichard and Taylor, entered. Tr. at 88–89.[1] He was approached by Guichard who, after asking for a cigarette and a light, informed him that he was going to rob the store and opened his jacket to reveal a shotgun pressed to his side, beneath his armpit. Tr. at 90–91, 97. Guichard advised Johnson to cooperate and then pushed him toward one of the checkout counters, warned one of the cashiers to "keep cool, I don't want to have to kill anybody," instructed the other cashier to open her register, and directed Taylor—who until that time had been lingering in one of the grocery aisles—to remove the money. Tr. at 91–92, 103–04, 110, 113. Taylor did so, pocketed the loot, and left the store, followed by Guichard, who backed slowly out while warning those present to remain still. Tr. at 92, 110, 113, 117–18. Once outside, Guichard entered a small station wagon, from which Taylor was seen to remove the license plate; after Taylor got in, the pair drove off. Tr. at 92–94. Johnson immediately phoned the police and supplied a description of the robbers and their automobile. Tr. at 93–94.

Johnson's account of the robbery was in large measure confirmed by the testimony of three other store employees, although two could not identify the defendants and none had actually observed the shotgun (one, Stanfield Reece, did testify that Guichard had stood with his coat oddly pressed to his side, Tr. at 128–29). Guichard, however, testified that he had entered the supermarket solely to help Taylor "boost" some meat and was unarmed. According to his version, he had identified Johnson as a kindred spirit and advised him

---

1. Unless otherwise indicated, page references are to the State trial court transcript.

of the plan—indeed, disingenuously offered him a share of the proceeds—in order to avoid interference, unaware of Johnson's status. Tr. at 166–68. The response he elicited was thus wholly unanticipated: Johnson proceeded to warn a number of the store employees to "be cool" and then instructed one of the cashiers to open her register. Tr. at 169–70. Taylor, who happened to be standing nearby, apparently decided to seize the opportunity created by Johnson and removed the cash. Tr. at 170. When Taylor left the store, Guichard had but little choice and followed. Tr. at 195.

In accordance with New York procedure, all four counts of the indictment were submitted in the alternative to the jury, originally with a direction that the lesser charges—second-degree robbery and third-degree grand larceny—were to be reached only in the event the defendants were found not guilty of first-degree robbery. Tr. at 272–73; see N.Y. CPL §§ 300.-40(3)(b), 300.50(4).[2] At counsel's request, the trial judge later advised the jury that they could consider the various counts in any order, in accordance with his instructions. Tr. 278–79. After a full day's deliberation, the jury returned a verdict of not guilty on the first robbery count (displaying a firearm, N.Y. PL § 160.15(4)) but guilty on the second (using or threatening the immediate use of a dangerous instrument, N.Y. PL § 160.15(3)); [3] no verdict was rendered on the two remaining counts. Prior to sentence, the trial judge denied Guichard's motion to set aside the verdict for repugnancy, but did reduce the conviction from first to second-degree robbery, as charged in the third count of the indictment. Thus modified, the conviction was unanimously affirmed by the Appellate Division, Second Department, on October 3, 1977, *People v. Guichard*, 59 A.D.2d 828 (mem.), and leave to appeal to the Court of Appeals was thereafter denied, *People v. Guichard*, 43 N.Y.2d 797, 402 N.Y.S.2d 1034, 373 N.E.2d 296 (1977) (Cooke, J.). Guichard's subsequent motion to vacate judg-

ment, on the grounds that the trial court was without power *sua sponte* to reduce the verdict and conviction, was denied on January 11, 1978, and leave to appeal that decision to the Appellate Division was denied on March 29, 1978.

## DISCUSSION

### A. *Exhaustion*

Guichard raises three grounds in support of his application: (1) that the trial court's *sua sponte* reduction of his conviction to second-degree robbery placed him twice in jeopardy for that offense; (2) that the reduction deprived him of his right to a jury trial on the second-degree charge; and (3) that the trial court's instructions to the jury impermissibly shifted to him the burden of disproving criminal intent, an essential element of each offense charged in the indictment.

Respondents raise the threshold objection that petitioner has not complied with the exhaustion requirement of 28 U.S.C. § 2254(b), (c). We disagree. As respondents concede, Guichard's second and third claims were presented in his direct appeal from the conviction and on his motion to vacate judgment, respectively. See Feinberg Aff. (6/6/78), ¶ 5. Although petitioner himself never presented a double jeopardy claim to the State courts, the issue was raised by his co-defendant on their consolidated direct appeal. See Respondents' Consolidated App.Div. Brief (Aug. 1977). Taylor's claim obviously did not succeed and it is plain that Guichard's indistinguishable contentions would fare no better. In these circumstances, further pursuit by Guichard of State remedies—assuming any remain—would undoubtedly prove futile; hence consideration of his double jeopardy claim at this time will not compromise those interests which are served by the exhaustion requirement. See *Stubbs v. Smith*, 533 F.2d 64, 68–69 (2 Cir. 1976); *Allen v. Court, Ulster County*, 568 F.2d 998, 1003 (2 Cir. 1977). Accordingly, we now turn to the merits of petitioner's three claims.

**2.** These provisions are discussed in detail below.

**3.** See note 4, *infra*.

### B. *Merits*

■ Petitioner's first claim requires little discussion. The fifth amendment's double jeopardy clause, made applicable to the States by the fourteenth amendment, see *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), serves "to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); see *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). While the clause thus prohibits successive trials as well as multiple convictions for the same offense, it does not preclude—on the contrary, favors—the consolidation in a single prosecution of multiple charges arising from the same transaction or conduct,[4] and is not ordinarily offended by the return of seemingly inconsistent verdicts on related counts. *United States v. McDaniel,* 176 U.S.App.D.C. 60, 66, 538 F.2d 408, 414 (1976); see *United States v. Klein,* 247 F.2d 908, 919 (2 Cir. 1957). See generally *Hamling v. United States,* 418 U.S. 87, 101, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Ordner,* 554 F.2d 24, 29–30 (2 Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *United States v. Mallah,* 503 F.2d 971, 985 n.7 (2 Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). *Compare United States v. Hannah,* 584 F.2d 27, 30 (3 Cir. 1978).

Petitioner does not, indeed, could not, ground his complaint on the different results reached by the jury on the two counts of first-degree robbery. He does, however, contend that their failure to render a verdict on the second-degree robbery count constituted an acquittal on that charge. In support of this contention, he relies upon N.Y. CPL § 310.50(3), which provides that once accepted by the court, "a verdict which is defective or incomplete by reason of the jury's failure to render a verdict upon every count upon which it was instructed to do so, . . . is deemed to constitute an acquittal upon every such count improperly ignored in the verdict."

■ This reliance is misplaced, for as noted above, the second-degree robbery count was submitted to the jury in the alternative, with an express instruction that a verdict on that count was to be returned only if they did not find the defendants guilty of the other charges. See Tr. at 272–73, 278–79. This instruction and the form of submission were plainly correct. Where, as here, an indictment contains "concurrent" counts—counts upon which only concurrent sentences may be imposed, see N.Y. CPL § 300.30(3); N.Y. Penal Law § 70.25(2)—jury submission is controlled by N.Y. CPL §§ 300.40(3) and 300.50. If the concurrent counts are "inclusory"—that is, "when the offense charged in one is greater than any of those charged in the others and when the latter are all lesser offenses included within the greater," N.Y. CPL § 300.30(4)—and are supported by sufficient evidence, "the court must submit the greatest or inclusive count and may or must, [if requested by a party,] also submit, but in the alternative only, one or more of the lesser included counts," *id.* § 300.40(3)(b), with the proviso that the jury may not return a verdict of guilty for more than one offense, *id.* § 300.50(4). Section 300.40(3)(b) provides that in such cases

> "[a] verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted, but not an acquittal thereon. A verdict of guilty upon a lesser count is deemed an acquittal upon every greater count submitted."

See also § 300.50(4). If the concurrent counts are noninclusory, as, for example, the two counts which charged Guichard with first-degree robbery, the court has the

---

4. In New York, the express command as well as the broader policy underlying the double jeopardy clause are implemented through a statutory scheme that prohibits not only seriatim prosecutions for the same offense, see N.Y. CPL § 40.20(1), but also separate prosecutions of charges based upon a single "criminal transaction," see N.Y. CPL §§ 40.40, 200.-20(2)(a).

discretion to submit one or more, separately or in the alternative. *Id.* § 300.40(3)(a); see *People v. Williams*, 47 A.D.2d 262, 366 N.Y.S.2d 894, 897–98 (2d Dep't 1975).

■ The jury undoubtedly understood their task, as evidenced by the verdict they returned, and certainly nothing in the record or any provision of New York law lends support to Guichard's contention that their silence with respect to the second-degree robbery count was intended to be or should be treated as an acquittal on that charge. Hence, his claim that his conviction was entered by the court in the face of a contrary jury determination is necessarily without merit.

■ Petitioner's second claim must also fail. It is settled that a court may, without constitutional impediment, reduce a conviction for an offense not supported by the evidence adduced at trial to one for a properly supported lesser offense, provided that the trier of fact has, in rendering its verdict, found each element of the lesser offense. *United States ex rel. Graham v. Mancusi*, 457 F.2d 463, 468 (2 Cir. 1972). This corrective power is recognized in the federal courts, see 28 U.S.C. § 2106; Rule 31(c), F.R.Crim.P.; *Theriault v. United States*, 434 F.2d 212 (5 Cir. 1970), cert. denied, 404 U.S. 869, 92 S.Ct. 124, 30 L.Ed.2d 113 (1971); *Allison v. United States*, 133 U.S.App.D.C. 159, 409 F.2d 445 (1969); 8A Moore's Fed. Practice ¶ 31.03[5] (1978), and is an established feature of New York criminal procedure, see N.Y. CPL §§ 330.30(1), 330.50(1), 470.15(2)(a); *People v. Dlugash*, 41 N.Y.2d 725, 737, 395 N.Y.S.2d 419, 428, 363 N.E.2d 1155, 1163 (1977).

■ The trial court did no more when it reduced the jury's verdict and entered judgment convicting Guichard of second rather than first-degree robbery. Although the latter offense, as defined in N.Y. Penal Law § 160.15(3), requires proof solely of a forcible stealing coupled with the use or threatened use of a dangerous instrument, and therefore may be established without proof that the defendant was "aided by another person actually present"—an essential element of the second-degree robbery provi-

sion under which Guichard was convicted, see N.Y. Penal Law § 160.10(1); *People v. Williams, supra*—the missing element is supplied when, as here, a first-degree finding is bottomed on a theory of accessorial or concerted conduct. See *People v. Johnson*, 60 A.D.2d 971, 401 N.Y.S.2d 617 (4th Dep't 1978); *People v. Stokes*, 60 A.D.2d 757, 400 N.Y.S.2d 609 (4th Dep't 1977); *People v. Green*, 60 A.D.2d 779, 400 N.Y.S.2d 643 (4th Dep't 1977).

Here, all three robbery counts alleged that the defendants aided one another and were actually present, see Tr. at 267, 268, 270, and in each instance the court instructed the jury that the prosecution had the burden of proving this element beyond a reasonable doubt, see Tr. at 268, 269, 270. The jury was also instructed that it could not find the defendants guilty of robbery unless the prosecution had met its burden of proving that the defendants had used or threatened to use physical force, an allegation amply supported by the record, quite apart from the proof regarding the alleged aggravating factors. See generally *People v. Woods*, 41 N.Y.2d 279, 392 N.Y.S.2d 400, 360 N.E.2d 1082 (1977). Hence, the trial court acted well within constitutional bounds when, upon determining that § 160.-15(3) was not applicable to the facts of the case, see Sentencing Minutes (6/18/76), at 11, it modified the verdict and entered a judgment of conviction for second-degree robbery.

Petitioner's third and final claim focuses on the following portion of the trial court's explanation of "intent":

"I charge you that intent is an essential element of every crime. Intent is the operation of the mind whereby a person aims to obtain the desired natural consequences or effect of his acts. It is a mental operation that cannot be photographed. It is silent, secret and invisible to the human eye. The intent of a person may, however, be ascertained from his conduct, his speech or from a combination of both. Generally, a man's actions and outward manifestations reveal an expression of his mind. It is not always by words alone that a man expresses his

intention. And I'm sure you know the old adage: 'Actions speak louder than words.' *It is a fundamental rule of evidence that a person is presumed to intend the natural consequences of his acts, unless the act was done under circumstances or conditions which preclude the existence of such intent.*" Tr. at 265–66 (emphasis supplied).

According to petitioner, this instruction in effect invited—or, at the very least, permitted—the jury to infer intent to commit robbery from the largely undisputed fact that his presence in the store at the time the larceny was committed figured in the store employees' subjective perception that their safety was threatened, and thereby shifted to him the burden of proof on this element.[5] Of course, this was not the theory of the prosecution's case, for its evidence tended to show that Guichard had played an active part in the robbery, even if he had not himself performed every act that constituted the offense.

■ The "natural and probable consequences" instruction has been severely criticized, particularly when coupled with a direction that the inference may be drawn " 'unless the contrary appears from the evidence.' "[6] See, e. g., *United States v. Chiantese*, 560 F.2d 1244 (5 Cir. 1977) (*en banc*) (prohibiting further use of formula), *on re-*

---

**5.** Article 160 of the Penal Law creates a three-degree structure for the offense of robbery, based upon the following core definition:

"§ 160.00 Robbery; defined
"Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
"1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
"2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

Such conduct, without more, constitutes robbery in the third degree. N.Y. PL § 160.05. The second and first-degree gradations of the offense, however, are defined in terms of certain aggravating factors, as follows:

"§ 160.10 Robbery in the second degree
"A person is guilty of robbery in the second degree when he forcibly steals property and when:
"1. He is aided by another person actually present; or
"2. In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
* * * * * *
"(b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."

"§ 160.15 Robbery in the first degree
"A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
* * * * * *
"3. Uses or threatens the immediate use of a dangerous instrument; or

"4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

The intent requirement derives not from the express language of these provisions but from the definition of robbery as a species of larceny, a specific intent offense, see N.Y. PL § 155.05(1); *People v. Cumberbatch*, 56 A.D.2d 808, 392 N.Y.S.2d 655 (1st Dep't 1977), and from the general rule, codified in N.Y. PL § 15.15(2), that criminal statutes will not be construed to impose strict liability absent a clear indication of a legislative intention to do so. See generally *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); cf. *People v. Lopez*, 58 A.D.2d 516, 395 N.Y.S.2d 455 (1st Dep't 1977). See also *Farrell v. Czarnetzky*, 566 F.2d 381 (2 Cir. 1977), cert. denied, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978) (holding allocation of burdens under § 160.15(4) constitutional).

**6.** For example, in *United States v. Robinson*, 545 F.2d 301, 305 (2 Cir. 1976), an appeal from a multi-count conviction for, *inter alia*, violation of 18 U.S.C. § 495, the following form of instruction was successfully attacked:

"In determining the issue of intent in this case a jury may reasonably infer, as I said before, that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted.
"So unless the contrary appears from the evidence, the jury may draw the inference that the defendant intended all the conse-

mand, 582 F.2d 974, reh'g denied, 587 F.2d 508 (1978); United States v. Garrett, 574 F.2d 778 (3 Cir.), cert. denied, 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978) (adopting Chiantese rule); United States v. Littlebear, 531 F.2d 896, 898 (8 Cir. 1976); United States v. Woodring, 464 F.2d 1248, 1251 (10 Cir. 1972). See generally Morissette v. United States, 342 U.S. 246, 274–76, 72 S.Ct. 240, 96 L.Ed. 288 (1952). As the Ninth Circuit explained in Cohen v. United States, 378 F.2d 751, 755 (9 Cir.), cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967):

> "The jury may mistakenly believe that it is permissible to infer specific knowledge or intent solely from the doing of a particular act, without regard to the totality of circumstances; or that the occurrence of the particular act shifts the burden of proof of knowledge or intent from the prosecution to the defense; or that the question is whether a reasonable man in similar circumstances would have had the requisite knowledge or intent, rather than whether the accused actually had it." [7]

See also United States v. Barash, 365 F.2d 395, 402–03 (2 Cir. 1966). More recently,

the Second Circuit has added a "constitutional dimension" to this criticism, holding that the instruction's burden-shifting potential runs afoul of the due process requirement, articulated in Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), that "the prosecution to bear the burden of proof beyond a reasonable doubt on every element that constitutes the crime charged against the defendant." United States v. Robinson, 545 F.2d 301, 306 (2 Cir. 1976). The Robinson court did not, however, lay down a rule of automatic reversal, holding rather that the charge would be read as a whole to determine whether the erroneous instruction had been cured by other language, thereby rendering the error harmless beyond a reasonable doubt. Id. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ A federal habeas court's power to set aside a State conviction on the basis of an allegedly improper jury charge is, however, far more circumscribed than that exercised by an appellate court on direct review:

> "The burden of demonstrating that an erroneous instruction was so prejudicial

---

quences which one in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the defendant."

Other examples can be found in the line of Fifth Circuit cases starting with Mann v. United States, 319 F.2d 404 (1963), cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), and culminating in United States v. Chiantese, 560 F.2d 1244 (1977) (en banc). The latter contains a particularly thorough review of the instruction's recent history.

7. It should be noted that this criticism has been expressed only in cases involving convictions for specific intent offenses. Although the State argued in the Appellate Division that robbery does not require proof of specific intent or knowledge, respondents have not renewed the contention in this proceeding. The proposition does not in any event appear to be supported by the New York cases, which require proof of specific larcenous intent, see, e. g., People v. Cumberbatch, 56 A.D.2d 808, 392 N.Y.S.2d 655 (1st Dep't 1977); People v. Banks, 55 A.D.2d 795, 389 N.Y.S.2d 664 (3d Dep't 1976), and seems oddly inconsistent with the intent charge actually given here. More important, where a

defendant's liability for a completed crime is necessarily accessorial, because he has not personally performed each of the acts that make up the offense, proof of specific intent to facilitate or to help bring about the crime is ordinarily essential. This at least is the rule in federal prosecutions based on 18 U.S.C. § 2(a), and its predecessor, § 550. See United States v. Prince, 529 F.2d 1108, 1112 (6 Cir.), cert. denied, 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976); United States v. Bryant, 461 F.2d 912, 918–21 (6 Cir. 1972); United States v. Garguilo, 310 F.2d 249 (2 Cir. 1962); United States v. Peoni, 100 F.2d 401 (2 Cir. 1938). While the New York courts seem never to have grappled with the precise issue under the current Penal Law, but cf. People v. Atkins, 76 Misc.2d 661, 351 N.Y.S.2d 859 (N.Y.C.Crim.Ct.1974), specific intent appears to be the factor that distinguishes statutory accessorial liability (imposed when the defendant has acted with the mens rea required for the completed crime, see N.Y. PL § 20.00), from the separate substantive offense of criminal facilitation, defined in Article 115 of the Penal Law. See generally A. Hechtman, Practice Commentary following N.Y. PL § 115.00 (McKinney's 1975).

that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 [1973], not merely whether '. . . the instruction is undesirable, erroneous, or even "universally condemned,"' *id.* at 146, 94 S.Ct. at 400." *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977) (elipses in original; footnote omitted). Measured against this standard, petitioner's third claim must also fail.

▪ First, the trial court carefully instructed the jury that the prosecution bore the burden of proving the defendants' guilt beyond a reasonable doubt, that the defendants were presumed innocent throughout, and that they were "entitled to every inference in their favor which can reasonably be drawn from the evidence." Tr. at 256.[8] Second, in contrast to the form of charge successfully challenged in *United States v. Robinson, supra,* the "natural and probable consequences" instruction here given was limited to a single sentence and was not the only guidance offered the jury concerning the method by which intent might be proved. Thus, the jury was first instructed that "[t]he intent of a person may . . . be ascertained from his conduct, his speech or from a combination of both," Tr. at 266, and again, immediately following the above-quoted excerpt, that

> "If you find that the defendants committed the acts charged, then you must decide whether or not from all the established facts, their speech, conduct and actions of the defendants [sic], they intended its commission.
>
> "Under the Penal Law, the word intentionally is defined as follows: 'A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.'" *Id.* (quoting from N.Y. PL § 15.05(1)).

It is therefore doubtful that the jury was by a few ill-chosen words led to believe that Guichard had the burden of proving that his intentions were, if not pure, at least not bent toward robbery. Indeed, counsel did not specifically object to the "natural and probable consequences" instruction at trial (although an exception was taken from the court's explanation of "acting in concert"[9]), and there is nothing in the charge to suggest, even obliquely, that a defendant ever bears the burden of proving his innocence

8.    "The defendants come before you clothed by law with the presumption of innocence in their favor. That presumption continues throughout the trial. It exists at this moment. It follows you into the Jury Room and remains with you during your deliberations. The only way that the mantle of presumed innocence can be removed from the shoulders of the defendant is when all twelve of you, on the basis of the evidence, accept and believe and are convinced beyond a reasonable doubt that the defendants are guilty.

"The defendants are entitled to every inference in their favor which can be reasonably drawn from the evidence. When two inferences can be drawn from the same facts, one consistent with guilt and the other consistent with innocence, the defendants are entitled to the inference which is consistent with innocence.

"In a criminal case, the burden of proof to establish the guilt of the defendants beyond a reasonable doubt always rests upon the pros-

ecution and never shifts. The defendant is never obligated to prove his innocence. Therefore, before you can convict the defendants, you must be convinced of their guilt beyond a reasonable doubt." Tr. at 255–56.

9.    The trial court explained the concept—and its legal consequences—in the following language:

"Before you can consider any evidence adduced against one defendant as binding upon this defendant, you must consider whether the prosecution has established beyond a reasonable doubt that the defendants were in fact acting in concert with each other and they were aiding and abetting each other. You must also understand when more than one person participates in the commission of a crime any act of one of the participants, while all are so mutually engaged, is binding up and attributable to all who are parties in the commission of the crime.

"You will recall that the indictment in this case charges that the defendants were acting

or of producing exculpatory evidence. *Cf. United States v. Erb,* 543 F.2d 438, 447 (2 Cir.), *cert. denied,* 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976). More important, the trial was fairly brief, the issues relatively clear-cut and plainly presented, and the evidence of guilt substantial. In these circumstances, it cannot be said that the single objectionable phrase in what was otherwise a fair and balanced charge "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten, supra,* 414 U.S. at 147, 94 S.Ct. at 400. In sum, any error was unquestionably harmless. *Compare Garcia v. Curry,* 583 F.2d 1188, 1192–93 (2 Cir. 1978).

Accordingly, the petition for a writ of habeas corpus is denied.

SO ORDERED.

in concert and each aiding the other, while actually present, committed certain acts constituting the crime alleged herein.

"What is meant by the phrase 'acting in concert'?

"Acting in concert in a criminal prosecution means just what it means in everyday life. When a crowd of people, two or more, get together to form a common end, then they're acting in concert. Take a baseball team. The pitcher and the catcher are the most active members of the team. The first baseman is a very active member of the team and so are the other infielders. Out in center field you might have a star like Willie Mays. Maybe he is the highest salaried member of the team. Yet on some days, because of the effectiveness of other team members, a fly ball may not be hit to center field. Yet, he is just as much a part of the team, working in conjunction with the team, acting in concert with his team mates, as the most active player. So, if two or more persons take part in the commission of a crime, no matter how great or how little a part he plays, and whether one does more or less in the furtherance of the criminal act, all are equally guilty.

"Before you can consider any evidence adduced against one defendant as binding upon the other, you must first determine whether the prosecution has established beyond a reasonable doubt that the defendants were in fact acting in concert and aiding and abetting each other. You must also understand that when more than one person participates in the commission of a crime any acts of one of the participants, while all are so mutually engaged, is binding upon and attributable to all who are parties of the commission of the crime.

"These defendants are being tried together as a matter of convenience. It is permissible under the law. But, nonetheless, each defendant has the right and you have the duty, to examine the case separately as to that defendant. So, you will separately consider and determine whether the prosecution has proven to you beyond a reasonable doubt from the credible evidence the guilt of each of the defendants." Tr. at 262–65.

Both defendants objected to so much of this portion of the charge as treated vicarious liability and renewed their request for an instruction based on N.Y. PL § 20.15, which recites that:

"Except as otherwise expressly provided in this chapter, when, pursuant to section 20.00, two or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state and with his own accountability for an aggravating fact or circumstance."

This application and several others—including a motion to dismiss the dangerous instrument count and that the jury be instructed on facilitation and petty larceny—were denied. See Tr. at 218–23, 249–50, 273–76.